433 So.2d 104 (1983)
STATE of Louisiana
v.
John Earl SQUARE.
No. 82-KA-0975.
Supreme Court of Louisiana.
May 23, 1983.
*105 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirpatrick, Glen Petersen, Asst. Dist. Attys., for plaintiff-appellee.
Sam D'Amico, D'Amico & Curet, Baton Rouge, for defendant-appellant.
WATSON, Justice.
Defendant, John Earl Square, was convicted by a jury of armed robbery in violation of LSA-R.S. 14:64.[1] He was sentenced to serve twenty-five years at hard labor. Defendant has appealed his conviction, relying on seven of nine errors assigned in the trial court,[2] and urging that his sentence is excessive.

FACTS
On September 12, 1979, at about 2:20 P.M., Mary Beth Denicola, a teller at Fidelity National Bank in Baton Rouge, Louisiana, was robbed of $4,618. A black man pointed a pistol, gave Denicola a paper bag, and said, "This is a stick up, baby. Put all the money in the bag." (Tr. 5) When Denicola complied she triggered the bank's surveillance cameras. Included with the money were a stack of fifty ten dollar bills with recorded serial numbers, "bait money", and $3,500 in fifty dollar bills. The robber left in a late model, two door, yellow, Chrysler Cordoba with a yellow vinyl top. *106 The license tag was turned up in an unreadable position.
Descriptions of the suspect and his vehicle were broadcast. Later that evening, Sergeant Silas Geralds, a detective with the sheriff's office, spotted a car that matched the vehicle description. Geralds had been advised that a similar car, used in another armed robbery at the American Bank, had a "B" license plate with 7 and 5 as the first two numbers, and possibly 407 as the last three numbers. Observing license plate number 754B907 and a black male driver, Geralds turned on his flashing red lights and stopped the car. Geralds informed Square, an acquaintance, that his car was under investigation. Lieutenant Jarreau and Sergeant Moranto, who were investigating the Fidelity Bank robbery, arrived separately a few minutes later. Square matched the robber's description [black male in his twenties, 5'11", about 160 pounds, tennis visor, medium length bushy hair], and was wearing a bracelet or wristband on his left wrist similar to one seen in the bank's film. Advised of his rights and told he was being taken in for questioning, Square allegedly asked if he could first retrieve some personal papers from the car. When Square reached beneath the seat, the officers became apprehensive. Jarreau grabbed Square's arm, revealing a purse type wallet bulging with cash in his hand. A fifty dollar bill was visible on the floor of the automobile. Square was advised he was under arrest for the armed robbery of the Fidelity National Bank and the wallet was seized. A search of the car pursuant to a warrant produced the fifty dollar bill from the floorboard, two paper bags, a new pair of shoes and a new pair of sunglasses. One of the bags contained a new shirt, pants, scarf and socks. A sales receipt dated September 12, 1979, showed that fifty dollars had been tendered for a $1.92 purchase. A total of $4,188 was in the wallet, including forty-seven ten dollar bills with the bait money serial numbers and $3,000 in fifty dollar bills.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant argues that the warrantless search and seizure of his wallet violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution because there was no probable cause for his stop, the seizure of the wallet and/or his arrest.
Law enforcement officers may detain a person for questioning when they reasonably believe that person has committed an offense. LSA-C.Cr.P. art. 215.1(A).[3] If an officer knows that a crime has been committed and has information which gives a reasonable basis to suspect a given person of having committed the offense, he is justified in making an investigatory stop. State v. Bickham, 404 So.2d 929 (La., 1981).
Sergeant Geralds was aware an armed robbery had been committed; the automobile he was following matched the description of the vehicle used to flee the scene of that robbery; and the driver of the automobile was, like the robber, a black man. When Geralds learned that a vehicle with the same description had been involved in an earlier armed robbery and that the license plate number was virtually identical with the license plate number of the car he was following, the officer was clearly justified in making a stop for further investigation.
There was probable cause for Square's arrest and he was in fact arrested when the officers told him he was being taken in for questioning. LSA-C.Cr.P. art. 201.[4] Both Square and his car met the *107 descriptions given in connection with the bank robbery. The bracelet or wristband on Square's arm had been seen in the bank's film. The officers reasonably believed that Square was guilty of the Fidelity Bank armed robbery and had probable cause for his arrest. LSA-C.Cr.P. art. 213(2);[5]State v. Collins, 378 So.2d 928 (La., 1980), cert. denied 447 U.S. 928, 100 S.Ct. 3025, 65 L.Ed.2d 1122. Obviously, Square would not have been allowed to leave at that point. State v. Bourgeois, 388 So.2d 359 (La., 1980); State v. Morvant, 384 So.2d 765 (La., 1980); State v. Rebstock, 418 So.2d 1306 (La., 1982).
The evidence is that Square was not searched.[6] Jarreau merely seized his arm as a precautionary measure. State v. Cobb, 419 So.2d 1237 (La., 1982). The officers could have reasonably inferred that Square was reaching for a gun, and the scope of the intrusion was limited to what was necessary to discover that fact. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Compare Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Lieutenant Jarreau's action in grabbing Square's arm was justified and could have been imperative. LSA-C.Cr.P. art. 215.1(B).[7]
Defendant argues that the wallet and its contents were not subject to seizure, because the officers could not specifically identify the money without the serial numbers. The large number of bills bulging from the wallet, coupled with the other circumstances, created a strong probability that the money was incriminating evidence of a crime. See Texas v. Brown, ___ U.S. ___, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The wallet was properly seized in connection with a legal arrest. LSA-C.Cr.P. art. 215.1(C);[8]New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Texas v. Brown, supra.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial court should have granted his motion for mistrial which alleged that the state's peremptory challenges were used to systematically exclude blacks from the jury. Nine of the state's ten peremptory challenges were to blacks; only one juror and the alternate juror were black.
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) held that the presumption a prosecutor is using the state's challenges to obtain a fair and impartial jury can be overcome only by a prima facie showing of a history of systematic exclusion of blacks by the prosecutor. Swain has been consistently followed in Louisiana. State v. Brown, 371 So.2d 751 (La., 1979); State v. Washington, 375 So.2d 1162 (La., 1979); State v. Roosevelt Allen, 380 So.2d 28 (La., 1980); State v. Perry, 420 So.2d 139 (La., 1982); State v. Albert, 381 *108 So.2d 424 (La., 1980). No showing of a history of systematic exclusion was made.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred when it denied his motion for mistrial based on the failure of the prosecution to disclose allegedly exculpatory information prior to trial.
During voir dire, after the prospective jurors had retired, the state advised that Square was not identified in a lineup relating to the armed robbery from which the partial license plate number was obtained.[9] When defense counsel moved for a continuance and/or a mistrial, because he had not had an opportunity to evaluate this evidence for the defense, the court held that the disclosure was in compliance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The state vitiates a defendant's right to due process of law when it suppresses evidence material to guilt or punishment in advance of trial "and perhaps during the course of a trial." United States v. Agurs, 427 U.S. 97 at 107, 96 S.Ct. 2392 at 2399, 49 L.Ed.2d 342 at 352 (1976). However, this evidence was not material; i.e., it would not have created a reasonable doubt that did not otherwise exist. Agurs, supra. The state made no effort to tie the two robberies together at trial, and the source of the partial license plate number was not revealed to the jury. Since there was no evidence of Square's complicity in the other armed robbery, the failure of witnesses to that robbery to identify him was irrelevant to this jury's determination of his guilt. Moreover, since the prosecution here disclosed the information before any evidence was presented to the jury, it is doubtful that the defense was prejudiced.[10]
The trial court did not abuse its discretion in refusing to grant a mistrial.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant complains that the trial court erred in admitting a photostatic copy of the "bait money" serial numbers into evidence despite objections that the copy was not properly authenticated nor the best evidence.
Mary Beth Denicola, the teller who was robbed, testified that she prepared the original list in May of 1979. She identified her handwriting and said she had given this copy to the investigating officers.
Where there is a mechanical reproduction of an original document, its admission over objection is reversible only if the content of the copy does not accurately reflect that of the original. State v. Demouchet, 353 So.2d 1025 (La., 1977); State v. Stuart, 344 So.2d 1006 (La., 1977). Ms. Denicola's testimony established the veracity of the photocopy.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant asserts the trial court erred in not giving requested special *109 charges on the presumption of innocence, reasonable doubt and attempted simple robbery as a responsive verdict to armed robbery. When the subject matter of a requested special charge is substantially included in the court's general charge, the special charge need not be given. LSA-C. Cr.P. art. 807;[11]State v. Edwards, 419 So.2d 881 (La., 1982); State v. Albert, 381 So.2d 424 (La., 1980). The trial court's instructions adequately covered the presumption of innocence and reasonable doubt.
LSA-C.Cr.P. art. 814 provides, in pertinent part:
"A. The only responsive verdicts which may be rendered where an indictment charges the following offenses are:

* * * * * *
"22. Armed Robbery;
Guilty.
Guilty of simple robbery.
Guilty of attempted armed robbery.
Not Guilty."
Thus, attempted simple robbery is not a responsive verdict under the article. While the trial court may "exclude" one of the listed responsive verdicts, it cannot add to their number. State v. Thibodeaux, 380 So.2d 59 (La., 1980); State v. Simmons, 357 So.2d 517 (La., 1978).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that the trial court's order that he show his teeth to the jury amounted to compulsory self-incrimination and violated his constitutional rights. Defendant also argues that the display was neither relevant nor material, and, even if it were, its prejudicial effect outweighed any probative value.
Denicola testified that she had noticed something "different" about the color of one of the robber's teeth. (Vol. III, p. 20) Over a defense objection, the court granted the state's request to let the jury view defendant's teeth. One of them was gold.
Requiring a defendant to demonstrate his physical characteristics before a jury does not amount to compulsory self-incrimination. See State v. Crochet, 354 So.2d 1288 (La., 1977), display of tattoo; State v. Anthony, 332 So.2d 214 (La., 1976), display of scar; and State v. Collins, 328 So.2d 674 (La., 1976), defendant required to show his teeth.
The evidence was relevant and material to defendant's identification. Its probative value outweighed its prejudicial effect.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends the trial court erred in overruling his hearsay objection to the testimony of the bank's auditor.
Robert J.J. Morris, internal auditor for Fidelity National Bank on the day of the robbery conducted an audit to verify the amount of the loss. When asked if he were able to determine the amount of cash that was missing, the defense objected that the result of the audit constituted inadmissible hearsay. Defendant argues that Morris was relating an out of court statement, the audit, in order to prove the truth of its contents. Morris' testimony that, as a result of his audit, he determined that $4,618 was taken, related a fact within his personal knowledge. His testimony did not include inadmissible hearsay. State v. Boyer, 406 So.2d 143 (La., 1981).
This assignment lacks merit.

*110 EXCESSIVE SENTENCE
Defendant contends that his twenty-five year sentence is excessive, arguing that the trial court failed to give adequate consideration to the mitigating circumstances as required by LSA-C.Cr.P. art. 894.1. Defendant claims that his age of twenty-two years, gainful employment, lack of a prior criminal record, and absence of personal injury to the victims of the robbery dictate a shorter sentence.
At the sentencing hearing defense counsel pointed out that defendant had no criminal record and no one was injured during the commission of the offense. The presentence investigation report indicates that defendant, age twenty-three, was employed. While defendant had no misdemeanor or felony convictions, he had been charged twice with misdemeanor theft, one resulting in a verdict of not guilty and the other nolle prosequied. Defendant was arrested for contempt of court in 1980 and had a fine for an expired license.
In sentencing the defendant, the judge found that: defendant was in need of correctional treatment in a custodial environment; defendant placed the bank teller in fear of losing her life and caused her anxiety; the public abhors the offense of armed robbery of a bank; and a lesser sentence would deprecate the seriousness of the crime.
While the guidelines in LSA-C. Cr.P. art. 894.1 must be considered, it is not necessary for every factor in that article to be enumerated. State v. Bradley, 414 So.2d 724 (La., 1982). All the mitigating factors were brought to the trial court's attention. The trial court is given wide discretion in imposing sentence and a sentence should not be disturbed absent an abuse of discretion. State v. Jones, 381 So.2d 416 (La., 1980). A twenty-five year sentence for armed robbery is not apparently excessive. There was no abuse of discretion. Compare State v. Robicheaux, 412 So.2d 1313 (La., 1982).

DECREE
For the foregoing reasons, the conviction and sentence of defendant, John Earl Square, are affirmed.
AFFIRMED.
LEMMON, J., concurs.
DENNIS, J., concurs disagreeing with the treatment of Assignment of Error # 2.
NOTES
[1] LSA-R.S. 14:64 provides:

"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
"B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence."
[2] The numbering of the defendant's assignments of error in the trial court differed from his brief in this court. The numbering used in brief is used throughout this opinion.
[3] LSA-C.Cr.P. art. 215.1(A), at the time defendant was stopped, provided:

"A. A law enforcement officer may stop any person in a public place who he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions."
[4] LSA-C.Cr.P. art. 201 provides:

"Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him."
[5] LSA-C.Cr.P. art. 213(2) provides:

"A peace officer may, without a warrant, arrest a person when:
* * * * * *
"The person to be arrested has committed a felony, although not in the presence of the officer; ..."
[6] The police could, of course, have searched the automobile as a contemporaneous incident of Square's arrest. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); State v. Hernandez, 408 So.2d 911 (La., 1982).
[7] LSA-C.Cr.P. art. 215.1(B), at the time defendant was stopped, provided:

"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime."
[8] LSA-C.Cr.P. art. 215.1(C), at the time defendant was stopped, provided:

"C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall return it, if lawfully possessed, or arrest such person."
[9] Although Ms. Denicola identified Square at trial, she admitted selecting another man as the robber in a lineup for this offense.
[10] "It has been argued that the standard should focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, rather than the materiality of the evidence to the issue of guilt or innocence. See Note, The Prosecutor's Constitutional Duty to Reveal Evidence to the Defense, 74 Yale L.J. 136 (1964). Such a standard would be unacceptable for determining the materiality of what has been generally recognized as `Brady material' for two reasons. First, that standard would necessarily encompass incriminating evidence was well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge." Footnote 20, United States v. Agurs, 96 S.Ct. 2392 at 2401-2402 (1976).
[11] LSA-C.Cr.P. art. 807 provides:

"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."