537 So.2d 772 (1989)
STATE of Louisiana, Appellee,
v.
Lisa DRUMMER, Appellant.
No. 20114-KA.
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
Rehearing Denied February 16, 1989.
Louis G. Scott, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Mark Donahoe, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
*773 NORRIS, Judge.
Appellant Renee ("Lisa") Drummer was indicted for distribution of cocaine, LSA-R. S. 40:967 A(1). Pursuant to a plea bargain she pled guilty to possession of cocaine, LSA-R.S. 40:967 C. The sentencing judge ordered a PSI and conducted a sentencing hearing at which Drummer testified. The judge sentenced her to three years at hard labor. Drummer now appeals, urging the sentence is excessive. For the reasons expressed, we affirm the conviction but remand for resentencing.
The incident occurred on April 30, 1987. Deputy O'Quinn of the Ouachita Parish Sheriff's Department received information that he could make a drug purchase from a house on Cairo St. in Monroe. He went there around 9:15 that evening, accompanied by a confidential informant whom Drummer knew. Drummer identified the CI as Peter Reynolds. O'Quinn and Reynolds went to the house and O'Quinn ultimately purchased a small capsule containing a white powder for $50. The substance in the capsule was analyzed and proven to be cocaine.
Drummer was indicted for distribution of cocaine, a Schedule II drug, but she pled guilty to possession. At a sentencing hearing on January 8, 1988, the judge gave a brief factual summary of Drummer's conduct. He noted the essentials of her personal history, especially the fact that she was currently unemployed. He stated that through her activities, she was making drugs available to other people in the community. He then cited the great caution with which she transacted the sale. This, together with Officer O'Quinn's information that a drug buy could be made at the house, led him to conclude that this sale was "not the first time that [Drummer] engaged in that type of conduct." Defense counsel objected, urging that the officer's affidavit did not establish a basis for this conclusion. Noting that the source of the officer's information was "very significant," the judge continued sentencing until a hearing could be conducted.
At the hearing on January 14, Dep. O'Quinn testified. He stated that according to his information, he could make a drug transaction" at that house; he did not recall receiving Drummer's name. He said Drummer was hesitant and cautious before handing the package over to him; she looked "shocked" to see him, and did not let them inside the house. He admitted, however, that he was not aware of her involvement in any other drug investigations. Apart from knowing that Drummer and the CI were acquainted, he admitted not knowing their relationship or what negotiations may have occurred prior to the incident.
Drummer also testified. She said that her friend, John Washington, gave her the capsule around 8:00 that evening with instructions to give it to Peter when he came to the house. She asked John what the capsule contained and he told her, cocaine. According to Drummer, Peter came to the house and said he did not want the package, but his friend O'Quinn did. She admitted giving O'Quinn the package and accepting the $50, which she later gave to John Washington. She insisted that she did all this only to accommodate John, who had left the house that evening to play basketball. This was the only time John had ever asked her to do such a thing, and she had at no other time sold drugs. She does not use drugs, not even marijuana. In response to a question by the judge, she replied she "had an idea that [John] was involved with cocaine." R. p. 81.
At the end of the hearing, the judge stated that despite O'Quinn's and Drummer's testimony, he considered it "unlikely" that Drummer had engaged in this conduct on only one occasion. He reiterated his belief that the incident was "not the first." He also noted the benefit accruing from the plea bargain. As originally charged, Drummer faced a minimum of five and a maximum of 30 years at hard labor or a fine of $15,000 or both. LSA-R. S. 40:967 B(1). Simple possession carries no minimum and a maximum of five years, with or without hard labor, or a fine of $5,000, or both. LSA-R.S. 40:967 C(2). By virtue of the plea, her exposure was reduced to less than the minimum sentence *774 under the offense originally charged. Feeling that these factors outweighed the mitigating circumstance of first felony status, the judge imposed three years at hard labor.
The test of excessiveness is two-tiered. First the record must show the sentencing judge took cognizance of the mandatory sentencing guidelines of LSA-C.Cr.P. art. 894.1. The judge is not required to list every aggravating or mitigating circumstance as long as the record shows ample consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983). The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. McGhee, 469 So.2d 1051 (La.App.2d Cir.1985).
The purpose of following art. 894.1 is to provide an adequate factual foundation for the sentence and not to produce a rigid or mechanical recitation of factors. State v. Lanclos, 419 So.2d 475 (La.1982). In the instant case the judge prepared a sentencing checklist which shows formal compliance with the article. On closer examination, however, we are not convinced this his considerations are supported by an adequate factual basis, and we are constrained to hold that inadequate weight was assigned to a number of mitigating factors.
Cursory review of the sentencing checklist shows that several factors were not genuinely considered. For instance, under factor No. 9, "The character and attitudes of the defendant indicate that she is unlikely to commit another crime," the judge marked "not present." While we prefer to indulge every doubt in favor of a trial court's findings, we have searched this record in vain for any valid factual basis for concluding that Drummer's character and attitude are indicative of further criminal conduct. Drummer denied the use of any illicit drugs, the PSI verified it, and she was not contradicted; thus there seems to be in her "character" no pattern of dependency that often leads defendants into small-time drug dealings. At the sentencing hearing, Drummer commented very unfavorably on her friend John's drug involvement. R. p. 81. This suggests to us a derogatory attitude toward a friend who has been shown to deal in cocaine; it indicates an attitude antithetical to further criminal activity. Under factor No. 8, "The defendant's criminal conduct was the result of circumstances unlikely to recur," the judge also marked "not present." However, neither the judge nor the record itself reveals what these "circumstances" might be. There is certainly no evidence that Drummer herself uses drugs; and although she was currently unemployed, she was living with her mother, so poverty or want of money does not seem to have been a factor. Under factor No. 6, "The defendant has compensated or will compensate the victim for the damage or injury that was sustained," the judge marked "not present." The record is, however, devoid of any evidence that the sheriff's department requested a refund, or that Drummer has refused to repay, the $50.; and at any rate the financial loss sustained here is not so great that compensation should be a major factor. In sum, we feel the evidence pertaining to these factors was not properly assessed and not adequately considered for its mitigating effects. See State v. Soco, 441 So.2d 719 (La.1983); State v. Forshee, 395 So.2d 742 (La.1981).
We must also question the conclusion that factor No. 10, "The defendant is particularly likely to respond affirmatively to probationary treatment," is not present. Admittedly, a first-offender is not automatically entitled to probation. State v. McKethan, 459 So.2d 72 (La.App.2d Cir. 1984). However, a 27-year old woman without so much as a prior traffic offense, who has been fairly steadily employed, who is attempting to complete an associate degree at college, and who shows a disdain for drugs and drug users, strikes us as a good candidate for probation. Because of her record and attitude, she should be entitled to more consideration under this factor. See State v. Smith, 485 So.2d 112 (La.App.2d Cir.1986).
*775 We are particularly concerned about the finding as to Drummer's prior record. According to the checklist, this was the only mitigating factor that possibly applied, and yet the judge reiterated his doubt whether Drummer's record was truly clean. Our review of the entire record reveals no factual basis to support this suspicion. Drummer's testimony offers a reasonable explanation for her hesitancy: she was expecting Peter to come alone, but he appeared accompanied by O'Quinn, whom she did not know. This probably surprised her. In addition to her own testimony, the PSI and Dep. O'Quinn's testimony supported her assertion that she had never sold drugs before. We acknowledge the potential for abusing the judicial system when a defendant pleads guilty to an offense and then takes the stand, outside the context of a trial with full cross examination, to assert the most favorable aspects of her case. Yet in this instance the record simply does not support the conclusion that Drummer was a regular drug dealer. See State v. Bourgeois, 406 So.2d 550 (La.1981), and State v. Molinet, 393 So.2d 721 (La.1981), in which sentences were reversed for first offenders who admitted prior drug involvement.
The only item in the record to support the judge's consideration is a statement in the PSI. The probation officer who prepared this report stated:
This is the case of a young woman with no previous record who claims that she has never used illegal drugs in her entire life. Nevertheless, it is a fact that she has sold Cocaine on at least one occasion in her life. The mere fact that undercover officers knew to come to her house, would seem to indicate to a reasonable man that the possibility exists that Renee has done this before. As the subject declined to offer a statement detailing the history of her involvement in this offense, it is difficult to ascertain the real truth.
This statement not only candidly admits that a history of other drug dealings is mere speculation, but it indulges in a false logic by which anyone who has ever handled drugs once must have handled them often. The purpose of art. 894.1 is to require a factual foundation for the sentence and to eliminate speculative foundations. This passage from the PSI does not provide an adequate basis for the conclusion that Drummer had sold drugs on previous occasions, especially since it raises only the "possibility" (not even the probability) of other criminal activity. Furthermore, Drummer offered a plausible explanation of why she delivered drugs on this occasion and why she was cautious and hesitant. This explanation was not available to the parole officer who prepared the recommendations in the PSI.
For these reasons, we are constrained to conclude that the sentencing judge committed error by assigning little or no weight to the one mitigating factor that he found nominally present, and further by deprecating this factor by reliance on a suspected criminal history that had no factual basis. He also committed error by not finding several mitigating factors that the record amply supported. Proper consideration of these factors would counsel in favor of a shorter sentence and, perhaps, probation. The instant sentence must be vacated and the case remanded for resentencing.
The second tier is constitutional excessiveness. A sentence violates LSA-Const. art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or is nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentencing judge has wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983). A plea bargain is a non-controlling factor in evaluating a sentence; when the defendant pleads guilty to an offense that does not describe the criminal conduct and involves violence upon the person of a victim, the judge has great discretion in *776 imposing a sentence at or near the maximum. State v. Smack, 425 So.2d 737 (La. 1983).
In this case the trial judge justified the sentence of three years at hard labor almost exclusively on the basis of the benefit accruing from the plea bargain. We cannot deny that the benefit was significant. However, one court has recognized that even the statutory minimum of five years at hard labor for distribution of cocaine may be constitutionally excessive. State v. Vampran, 459 So.2d 1333 (La.App. 1st Cir.1984). Moreover, the instant offense did not involve violence upon a person. We can therefore see no justification for an upper-range sentence against this defendant, who has a clean prior record and possessed a very small quantity of the drug. We naturally share the sentencing judge's concern about the societal evils spawned by illicit drugs. See State v. Bourgeois, supra, and State v. Vampran, supra. And yet, upon due consideration, we cannot conclude that this offender and this offense merited the sentence imposed. It shocks our sense of justice.
We therefore vacate the sentence and remand the case for reconsideration of the art. 894.1 factors and imposition of a nonexcessive sentence, along the lines of that imposed in State v. Brazell, 499 So.2d 177 (La.App.2d Cir.1986), writ denied 501 So.2d 206 (La.1987). We also commend to the sentencing judge's attention our conclusion that based on the record before us, Lisa Drummer would be a good probationary candidate.
CONVICTION AFFIRMED; SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.

ON APPLICATION FOR REHEARING
Before HALL, NORRIS, LINDSAY, MARVIN and SEXTON, JJ.
Rehearing denied.