SEXTON, Judge.
Defendant appeals a sentence of eight years at hard labor without parole, probation, or suspension of sentence following her guilty plea to a charge of first degree robbery, arguing that the sentencing judge failed to properly apply the sentencing guidelines contained in LSA-C.Cr.P. Art. 894.1, that the court failed to state for the record the considerations taken into account in determining the sentence, and that the sentence imposed was excessive. We affirm.
On November 14, 1988, defendant entered the Stonewall Branch of the First National Bank of Mansfield, Louisiana. Defendant initially told a bank employee that she wished to open an account. The employee asked her to have a seat and wait for her as she needed to step away. When the bank employee returned, the defendant walked up to her and stated, “Give me all your money; I have a bomb.” When asked to repeat it, the defendant said, “I have a bomb.”
At that point, the bank manager walked out of his office and the employee told defendant to tell him what she had said and she again said, “Give me your money; I have a bomb.” When the manager asked to see it, the defendant fumbled around her waist and produced a chrome-plated, short-barreled pistol, immediately sticking it to the side of the bank employee. The defendant left the bank with $11,005, of which all but $19 was recovered. While the defendant was at the bank, an alarm had been set off by the removal of “bait money” from the teller’s cash drawer.
After leaving the bank, the defendant crossed the road, got into a green truck *258 with a black man who was waiting by it, and drove away. They proceeded south and turned west on Stonewall Preston Road. The pickup truck was spotted by a deputy sheriff fairly quickly and a chase ensued, continuing into the southern edge of Caddo Parish where the two were finally apprehended. Defendant pled guilty shortly after being charged. She requested that psychiatric examinations be conducted pri- or to sentencing.
Dr. James Phillips, a psychiatrist and defendant’s attending physician, submitted his discharge summary on the defendant to the court. The final diagnosis by Dr. Phillips was that the defendant was suffering from a major depressive disorder and a mixed personality (histrionic dependent, self-defeating) disorder. The defendant reported to Dr. Phillips that she had been married to her husband for some time and that he was inordinately demanding of her. Because of her husband’s unreasonable demands that she buy him a truck, she impulsively robbed a bank and was caught along with her accomplice, a stranger that she met while out riding around.
The symptoms reported to Dr. Phillips included inability to sleep, a constant state of depression with frequent tearfulness and feelings of futility, loss of interest in activities, feelings of guilt and suicidal ideation but with no plans to commit suicide. The defendant has a history of anorexia, having been hospitalized for it during her senior year in high school. Also, she is the product of an emotionally abusive mother and a dysfunctional family. As a result of having grown up in a dysfunctional family, the defendant is prone to be so co-dependent that she will do unrealistic things in order to meet the demands of others, particularly her husband and her mother.
The doctor’s prognosis was that approximately five hours of therapy per week in the next six months to a year would be necessary to allow the defendant to overcome her self-defeating lifestyle. However, that prognosis was guarded because of the defendant’s deeply ingrained tendency to set herself up in “bad situations.” Nevertheless, the doctor advised against incarceration and in favor of supervised probation requiring psychotherapy and banning any relationship with a male, except in the context of a male attending to her individual therapy.
While the defendant was in the hospital under the care of Dr. Phillips, she was evaluated by Tom B. Ray, Ph.D., a clinical psychologist in Shreveport. She reported to him that after marrying her husband, she could not do anything to please him despite all of her best efforts. She reported that her husband was abusive, and described an incident in which he handcuffed her to her bed and played Russian roulette with her. She also reported to Dr. Ray that she had a history of anorexia but thinks that her eating problem is pretty much under control, although she did think she needed to lose a few pounds.
The psychologist found a significant degree of dysphoria (the feeling of being unwell, a vague but troubling discomfort) and that the defendant is pessimistic about the future and uncertain of her ability to cope with problems. He found that she has strong feelings of insecurity, a negative self-concept, and lacks self-esteem. Further, he opined that the disturbance in her body image reveals underlying doubts about her own femininity which accounts in part for her anorexia. The final diagnostic impression of the psychologist was that the defendant is suffering from a depressive disorder and has a dependent personality. He found her to be a fairly disturbed young woman with a variety of emotional conflicts.
In response to a request by defense counsel at the date of the guilty plea, the defendant was also examined by Dr. Paul D. Ware, a psychiatrist, after his appointment by the court.
Dr. Ware’s evaluation included the defendant’s description of the events leading up to the robbery. These are that she was involved in a very abusive marriage in which she was very dominated and controlled by a physically and sexually abusive husband. Although she separated from her husband from March of 1988 until Oc *259 tober of 1988, when they got back together he began blaming her for bad things that had happened to him and she began to feel inadequate and responsible for his misfortune. As a result, when he insisted that she buy him a truck or get the money, whether she had to sell drugs or rob a bank to do so, she felt desperate and began trying to get the money in different ways.
A finance company agreed to lend her the money to buy a truck if she could produce $3,200 for a down payment. In an attempt to borrow money from a woman with whom she had previously worked in Shreveport, the defendant met her co-defendant when he approached her to try to sell her some crack cocaine. She told him how desperate she was for money, and on one or two occasions in the next two days they talked and agreed to rob a bank. According to the history she gave to Dr. Ware, she followed the instructions of her co-defendant in robbing the bank. She also described to Dr. Ware the event in which her husband played Russian roulette with her using live ammunition.
The doctor found that she had clear features of a passive dependent personality in that she has learned to adapt in the world and has tried her best to please others and to avoid creating difficulties. Since she grew up in a dysfunctional family with a mother who was victimized, used, and abused by men, she operates in the same pattern. Because she is caught up in this pattern, she cannot adequately make her own decisions. It appeared clear to Dr. Ware that, because of this victim pattern, she felt she must respond to her husband’s request for a new truck and that the bank robbery was part of that desperate reaction on her part. The doctor found that she was aware of what she was doing and knew that it was wrong, but because of the chronic and prolonged abuse and victimization that she had experienced, she was unable to think clearly about situations and make her own best decision.
Dr. Ware reported to the district court that the defendant is suffering from dys-thymia (or reactive depression) and, of more significance, she clearly has a passive dependent personality disorder. The doctor made the following recommendation:
Considering all of the above, I do not believe this woman would benefit from incarceration or serving prison time. I do believe she is desperately in need of a structured psychiatric program and feel it is imperative for her recovery.
I strongly believe that she be given no sentence and placed on supervised probation with a clear condition of the probation that she be involved in therapy.
After receiving these reports and a pre-sentence investigation prepared by the Department of Public Safety and Corrections, the trial court, reviewing Art. 894.1 considerations, sentenced the defendant to eight years at hard labor. The defendant now appeals that sentence. The defendant combines the three assignments of error into one argument in brief.
Although the sentencing judge is given wide discretion in imposing a sentence within the statutory limits, if there is a manifest abuse of discretion by the sentencing judge, the sentence will be set aside as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983); and State v. Thomas, 468 So.2d 592 (La.App. 2d Cir.1985). LSA-C.Cr.P. Art. 894.1 provides the sentencing guidelines used to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); and State v. Thomas, supra.
The record of the defendant’s sentencing hearing reflects that the trial court complied with the sentencing guidelines of LSA-C.Cr.P. Art. 894.1. The trial court reviewed the facts of the case, including the sentence given and the reasons for the sentence given to the co-defendant. These included that the co-defendant was an active participant in the offense and that he had been extensively involved with the criminal law. The court then stated that although the defendant was an active participant in the offense, she had no prior involvement with the criminal justice system.
*260 The trial court initially noted that first degree robbery is a serious offense. The trial court then mentioned the psychological evaluations regarding the defendant. The court noted that two doctors had found her to have a very well-delineated mental problem which motivated her to do things which are not in her best interests. The court stated that it weighed these mitigating factors, the lack of a criminal record, and the legitimate dysfunction, against the seriousness of the offense.
In this balancing process, the court took into consideration the factors outlined in LSA-C.Cr.P. Art. 894.1, including that the defendant has a 2-year-old son who will suffer if she is put in prison. The court also considered whether her conduct was likely to recur; the court could not conclude one way or the other. The court noted that although the defendant is not the type of person who had been in and out of trouble all of her life, the court could not say that she would not get into trouble again.
The court then stated that her conduct did threaten serious harm, although no one was actually hurt. The court concluded that she must have contemplated the criminality of her conduct despite the existence of her mental dysfunction. Indeed, Dr. Ware indicated that she did understand the nature of her actions.
As to whether the defendant acted under strong provocation, the court noted that, in one sense, she did because of her mental dysfunction, but that the victim in no way facilitated the offense. On the issue of whether there were substantial grounds tending to excuse her conduct, the court found that her mental dysfunction, although weighing in her favor, did not excuse her conduct because not all people suffering from mental dysfunction rob banks. The court then examined the character and attitude of the defendant. Although acknowledging that with extensive help she might significantly improve, the court could not determine whether or not her character and attitude weighed in her favor.
Ultimately, the court sentenced defendant to eight years at hard labor without benefit of probation, parole, or suspension of sentence. In so doing, the court stated that for all the reasons reviewed above, it determined that a lesser sentence would deprecate the seriousness of the offense and that part of the court’s obligation in imposing sentence was to deter others from similar conduct.
The first two assignments of error, that the court failed to properly apply the sentencing guidelines and that the court failed to state for the record the considerations taken into account, are both clearly without merit. The trial court properly considered all of the LSA-C.Cr.P. Art. 894.1 guidelines and more than adequately stated these considerations for the record. The third assignment of error, that the trial court erred in imposing an excessive sentence on the defendant, is more difficult. However, given the wide latitude of the trial court in sentencing, we fail to find a clear abuse of that discretion.
The defendant’s eight-year sentence is one-fifth of the maximum sentence. By definition, first-degree robbery is a robbery with the perpetrator leading the victim to believe that he or she is armed with a dangerous weapon. This is a very serious offense by its very nature.
On the other hand, all but $19 was retrieved by the bank and no injuries occurred. Further, as evidenced by the reports of the two psychiatrists and the psychologist, defendant is suffering from a severe mental dysfunction which prompted her actions, although her condition is not such as to provide a basis for an insanity defense. Although Drs. Phillips and Ware felt quite strongly that the defendant should be given a probated sentence as prison would be detrimental to her condition, such a sentence is illegal as first-degree robbery requires that the defendant must be given at least three years without benefit of parole, probation, or suspension of sentence. Moreover, since defendant produced a pistol during the course of the incident, she is actually guilty of armed robbery, which carries a minimum sentence *261 of five years without benefit of parole, probation, or suspension of sentence.
Given the seriousness of the offense, as well as all of the factors taken into account by the district court, we are unable to say that the sentence imposed shocks our sense of justice. We affirm the defendant’s sentence.
AFFIRMED.