NORRIS, Judge.
The defendant, Wilbert Smith, was charged by bill of information with the aggravated burglary of Gladys Evans’s house in Shreveport and the attempted second degree murder of Willie Smith Sr. The defendant proceeded to a jury trial, after which the jury convicted him of the lesser included offense of unauthorized entry of an inhabited dwelling, La.R.S. 14:62.3, and acquitted him on the attempted murder charge. The trial court later sentenced Smith to three and a half years at hard labor with credit for time served. Smith now appeals, urging only that the sentence is excessive. We affirm.
These charges arose out of an incident on April 22, 1988. Wilbert Smith had been dating and living with a woman, Grantlynn Sue Powell, on-and-off for several years. Around noon on April 22 she left him, allegedly carrying off $8 or $10 of Wilbert’s money. Later that day Wilbert learned that Sue may have gone to Gladys Evans’s house on Marion Street. Mrs. Evans, an 82-year old woman with health problems, lived there with her grandson, Willie Evans Jr. Sue had also been having a relationship with Willie Jr., unbeknownst to Wilbert. Wilbert went to the house that evening, ostensibly to talk to Sue and get his money back. Sue was sitting on a bench in front of the house, talking and drinking with Willie Jr., his father Willie Smith Sr. (no relation to the defendant), and Willie Sr.’s girlfriend, Ruby Faye Moore. When Sue saw Wilbert coming, she ran into the house and hid. Willie Jr. went inside with her, although Ruby Faye thought he was already inside.
According to Wilbert, he walked to the front door and knocked, but got no response from inside. He asked Willie Sr. where Sue was, and Willie Sr. replied she was in the house. Wilbert said only the outer screen door was shut and the wooden door was ajar, so he just opened the screen door and walked inside. According to Willie Sr. and Ruby Faye, however, Wilbert pounded and kicked on the door and finally forced it open with his body. Sgt. Morgan, the ID officer who investigated the scene, could find no evidence of a forced entry and the photos in evidence (Ex. S-20, 21) support this conclusion. Sgt. Ashley, the homicide officer who also participated in the investigation, testified that the door could have been forced open without damage to the facing, knob and bolts. It is quite clear, however, that neither Mrs. Evans nor Willie Jr., who lived in the house, gave Wilbert permission to come in.
Wilbert testified that he went inside and intended to look for Sue, but before he could leave the living room Willie Jr. and Willie Sr. crashed through the front door, holding a baseball bat and handgun respectively; they told him, “We are going to f*** you up.” Mrs. Evans then walked in; as a defensive measure Wilbert grabbed her and used her as a shield, lacing one arm around her neck. Somehow Willie Jr. and Willie Sr. exchanged weapons and Willie Sr. hit Wilbert on the head several times *104 with the bat while Willie Jr. held the gun on him and fired a few shots over his head. Wilbert did not explain how Willie Sr. managed to crown him without harming Mrs. Evans. Wilbert testified he was dizzy from the blows and blinded by blood running into his eyes, so he released the grandmother and made a dash for the door, but Willie Jr. shot him on the way out. He escaped and ran for the front yard. He testified that he had no intention of harming or kidnapping Mrs. Evans. He admitted he had a pocketknife in his pocket, but insisted he did not draw it or hold it on Mrs. Evans. He characterized himself as the victim of a “trap” that Willie Jr. and Sr. had set for him.
Willie Jr. told a different story of what went on inside. Anticipating trouble when he saw Wilbert coming up, Willie Jr. followed Sue inside; he did not fetch the pistol until he saw Wilbert stalking, knife in hand, toward Mrs. Evans’s bedroom and asking for Sue. Willie Jr. testified that Wilbert grabbed Mrs. Evans, held the knife to her neck and threatened to “cut the b****’s throat.” Willie Jr. fired a few shots, not for the purpose of striking Wilbert, but when he saw blood on the floor he realized the assailant had been hit. Willie Jr. was not sure how he managed to shoot him while Mrs. Evans was being used as a human shield between them. Wilbert then released Mrs. Evans and ran out the door. Notably, Willie Jr. testified that Willie Sr. was outside the whole time, a point that Willie Sr. corroborates. Willie Jr. felt that Wilbert came around to harm Sue and wound up nearly injuring Mrs. Evans. Willie Jr. also felt that he had to shoot at Wilbert in order to protect his grandmother.
Willie Sr. testified that he stayed outside; before he heard any shots he heard Wilbert say he would “kill the b”**.” Ruby Faye Moore seemed to corroborate that Willie Sr. did not enter the house, though she later testified that when Wilbert emerged he was tussling with Willie Sr. She added that from outside she could hear Wilbert threatening to kill Sue; however, she did not hear any gunfire.
Getting out of the house did not mean the end of the struggle. Wilbert testified that as he was running away, Willie Sr. chased him down, brought him to the ground and started wrestling with him. Wilbert is 5'10" and weighs 225 lbs.; Willie Sr. weighs 146 lbs. Wilbert thought he could see Willie Jr. standing on the front porch, reloading his pistol. Only after several blows to the face failed to stop Willie Sr.’s assault, Wilbert drew his knife and stabbed Willie Sr. a number of times. At this point Wilbert broke loose and ran some distance before stopping in an alley. He did not remember what he did with the knife. He had a bullet wound in his side and some gashes in his head, all of which he was sure he sustained inside the house at the hands of Willie Jr. and Willie Sr. He felt that stabbing Willie Sr. was necessary in order to escape the scene.
Willie Sr., however, denied that he chased and tackled Wilbert; rather, he was standing outside the front door when Wilbert bounded out and knocked him over. Wilbert got on top and, his knife already drawn, started slashing at Willie Sr.’s chest and face. Willie Sr. sustained 13 stab wounds. Willie Sr. testified that Wilbert ceased his barrage only because Ruby Faye came up from behind and hit him in the head several times with a stick. Ruby Faye corroborated this, admitting she crowned Wilbert with a 2 x 4; she felt her quick action saved Willie Sr.’s life. As noted, Wilbert denied that Ruby Faye or anyone else hit him with a stick or 2 X 4 outside; he even denied that Ruby Faye was present that night.
A neighbor had called the police at the sound of gunfire. When Corporal Bonette arrived, he found a black woman trying to mop up the blood on the livingroom floor. He also found three bullet holes in the wall and ceiling. Sgt. Morgan, the ID officer, found four spent rounds in the yard and none in the house; she found fragments of copper jackets inside. No gun was recovered. Sgt. Morgan also found three items lying in the yard: a 2x4, obviously bloodstained, a baseball bat and an axe handle. She testified that the bat did not appear bloody, and yet photos in evidence *105 (Ex. S-25, 31) show what appears to be blood on the bat. Sgt. Morgan testified that the bat was sent to the crime lab, but no lab report was introduced at trial or filed in response to discovery. Sgt. Morgan stated that she did not recover the knife that was introduced at trial as Wilbert’s weapon; in fact, she never saw it until the day before trial. Wilbert admitted in testimony that it was his knife. Willie Jr. testified that after the incident, he left the scene and hid the pistol several blocks away by the Sessions Motel. He also stayed away from the police for a day or two; by the time they went to retrieve the pistol, it had disappeared.
Two of the persons involved in the incident did not testify. Mrs. Evans, who was 82 years old at the time, died of unrelated causes in July 1990, six months before trial. Sue Powell also did not testify; Ruby Faye Moore explained that she had not heard from Sue in over two years.
On the first count, aggravated burglary of Mrs. Evans’s house, the jury returned the responsive verdict of unauthorized entry of an inhabited dwelling. On the second count, attempted second degree murder of Willie Smith Sr., the defendant was found not guilty. On appeal he urges that his sentence of three and a half years at hard labor is excessive.
The test of excessiveness is two-tiered, the first being a review for the district court’s compliance with the sentencing guidelines of La.C.Cr.P. art. 894.1. See, e.g., State v. Smith, 433 So.2d 688 (La.1983). Smith admits in brief that the court followed the guidelines, but argues it did not give sufficient weight to mitigating factors which, in Smith’s opinion, would have warranted a lesser or even a probated sentence. He urges that his criminal record consisted only of misdemeanor offenses and that he has been a law-abiding citizen most of his life. He further urges that this was his first felony and he was seriously injured in the incident. Finally, he claims that imprisonment will cause hardship for his two minor children.
Prior to sentencing, the trial court reviewed a presentencing investigation report («PSP») Counsel declined to add to or comment on the PSI, though he did explain that Smith’s failure to appear for an earlier sentencing date was the result of unspecified financial difficulties. The court stated that Smith’s failure to appear would have no bearing on the sentence.
The court noted that Smith was 36 years old and convicted of an offense that carried a maximum sentence of six years at hard labor and a fine of $1,000. Smith was found guilty of middle grade theft (a felony) in 1981 and placed on probation which expired in 1984. From 1982 to 1988 Smith was convicted of DWI four times and of driving under suspension; the court stated, in effect, that these misdemeanor charges were not aggravating factors. Smith also had a “skimpy” employment record, his last job being at Highland Hospital in 1987. Smith had testified that he was an unemployed journeyman electrician. The court also noted Smith’s problem with alcohol abuse in that he attended the Minden Substance Abuse Clinic in 1984 and 1985.
Turning to the statutory factors, the court stated that the violence of this incident created an undue risk that Smith would commit another crime if given a suspended sentence; that his conduct threatened and caused serious harm, which he should have anticipated; the victims did not induce or facilitate the crime of unauthorized entry; and no compensation was paid to the victims. While on probation, Smith had a poor reporting record but caused no problems. A high school graduate, he had no vocational training, special skills or military record. An alleged employment in early 1990 could not be verified. Smith is separated from his wife and has two children; he testified at trial that they were living in Texas with their mother. The PSI is silent as to whether Smith was supporting the children.
In mitigation, the court noted that Smith may have acted under some provocation, which we perceive to mean Sue Powell’s desertion, infidelity and alleged theft from him. This incident was actually Smith’s second felony but he was not eligible for probation because the offense involved the *106 use of a dangerous weapon by the defendant. La.C.Cr.P. art. 893 A. Moreover, Smith’s conduct started a violent chain of events; this would- support the court’s choice not to place him on probation even if he otherwise qualified. See State v. McKethan, 459 So.2d 72 (La.App.2d Cir.1984), and citations therein.
All in all, the court's analysis of the sentencing factors was adequate.
The second tier is constitutional excessiveness. A sentence violates La. Const, art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A grossly disproportionate sentence is one that shocks the sense of justice, when the crime and punishment are viewed in light of the harm done to society. State v. Hogan, 480 So.2d 288 (La.1985). A sentence within the statutory limits will not be disturbed absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
Regardless of his perceived justification for seeking out Sue Powell that night, the fact remains that Smith entered a stranger’s house uninvited and armed with a dangerous weapon. The evidence strongly suggests that Smith intended some harm to befall Sue, though he denied this on the stand, and it seems clear that he placed Mrs. Evans in some danger as well. As a result of his trip to the Evans house, both the defendant and Willie Smith Sr. were injured and the elderly Mrs. Evans was badly shaken. While the jury was entitled to find that the stabbing of Willie Smith Sr. was provoked or justified, the defendant’s apparent intent to harm Sue wherever she might be was out of proportion to the provocation. This culpable intent and the violent outcome, together with Smith’s prior felony, alcohol abuse and poor job history, counsel the substantial sentence that the district court imposed. It does not shock our sense of justice. The assignment does not present reversible error.
We have reviewed the record for error patent. La.C.Cr.P. art. 920(2). At sentencing, the court advised Smith that he had three years “from this date to file for post conviction relief or appeal.” R. p. 418. The three-year period for filing post conviction relief begins from the date the judgment is final, not from the date of sentencing. La.C.Cr.P. art. 930.8 A. Appeals must be taken within five days. La.C.Cr.P. art. 914. Because this appeal was taken timely and Smith’s PCR rights have not been prejudiced, the court’s simple misstatement is not reversible error. La. C.Cr.P. art. 921.
Wilbert Smith’s conviction and sentence are affirmed.
AFFIRMED.