| WOODARD, Judge.
During the early morning hours of May 7, 2000, Ronald James Thomas robbed and attempted to murder his supervisor, Rose Solomon. By bill of information, the State charged him with armed robbery and attempted second degree murder, violations of La.R.S. 14:64, 14:27 and 14:30.1. A jury found him guilty of both counts. The prosecution filed a habitual offender bill of information but withdrew it at the sentencing proceeding. The Defendant received a sentence of ninety-nine years at hard labor, without the benefit of parole, probation, or suspension of sentence, for the armed robbery conviction and fifty years at hard labor, without the benefit of probation, parole, or suspension of sentence for the attempted second degree murder conviction to run consecutive with the sentence imposed on count one or any other sentence, which the Defendant may be serving. Ultimately, the trial court denied his motion to reconsider his sentence.
On appeal, his counsel filed a motion to withdraw as attorney of record under An-ders v. California[1]. The Defendant filed a pro se brief, assigning two errors.
For the following reasons, we grant defense counsel’s motion to withdraw and affirm the Defendant’s convictions and sentences.
* * * * *
Rose Solomon supervised a custodial services’ crew from, approximately, 1:00 *1263 a.m. to 7:30 a.m. at the Super K-Mart store in Lafayette. The Defendant, also, worked as a crew member but depended on his supervisor to provide him transportation to and from work. On May 7, 2000, shortly before 1:00 a.m., Ms. Solomon left for work with two employees, one of whom was her fiancé, Joseph Lilly. They went to the Defendant’s mother’s house to pick him up. He was not there. They then drove to work.
When she arrived at work, short-handed, her fiancé called the Defendant, who agreed to come in if provided with a ride. Unaccompanied, Ms. Solomon went to pick him up. On the way back to the store, they had a conversation about her being short-handed. He told her that he had a friend who wanted to work if she would pick him up. She agreed and followed his directions to what she thought was his friend’s | ¡.house. Instead, he directed her to a gravel road. She realized something was untoward when she did not see any houses and tried to back up to turn around. He grabbed the gear shift, put the car in forward, and told her that he wanted to rob her. She told him that he did not have to because she would loan him money. Nevertheless, he took a knife out of his pocket and threatened her with it. Fearful for her life, she complied with his demands that she park her car, retrieve her purse, and get out. He took the money out of her purse and told her that he had to kill her. He tried to stab her. She fought back.
At some point, she managed to get away from him and hid on the opposite side of a fence. However, he found her, beat her again, then, dragged her to the front of her car and ran over her legs. She dragged herself away, because she heard him “shifting the car like to back up on me[.]” Again, she hid and watched as he obtained a pair of bolt cutters, about two feet long, from the trunk of the car. He beat her with the bolt cutters until she lost consciousness.
At approximately 7:30 a.m., the newspaper delivery man found her with a pool of blood around her head. She arrived at University Medical Center in Lafayette, thirty minutes later, in critical condition. According to Dr. William Freeman, her injuries were consistent with her account that she was stabbed, hit by an automobile, and beaten about the head with a heavy object, causing three depressed skull fractures. Her injuries required emergency neurosurgery, two surgeries to her leg, and cosmetic surgery to her ear, which needed to be reattached.
ERRORS Patent
In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. We find none.
Motion to Withdraw
In State v. Benjamin,[2] the fourth circuit delineated the appropriate procedures for an appellate court to analyze an Anders brief:
| ¡When appointed counsel has filed a brief indicating that no non-frivolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, Anders requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court’s review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the *1264 proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal.[3]
We have performed an independent, thorough review of the record, including pleadings, minute entries, the bill of information, and the transcripts. We found that the trial court determined that the State properly charged the Defendant, by a signed bill of information, with armed robbery and attempted second degree murder. A jury of twelve convicted him of the two charged offenses. Subsequently, he received legal sentences for each of his convictions.
Thus, we grant counsel’s motion to withdraw.
Denial of Request for MistRial
The Defendant claims that he suffered prejudice when the trial court denied his request for a mistrial. He claims that his appearance before the jury in handcuffs and shackles destroyed the presumption of innocence.
At trial, his counsel moved for a mistrial on that basis; the Defendant had been brought before the jury, earlier that morning, in leg shackles, which were not removed until he was behind the defense table. Although the judge assumed that the jurors saw him in handcuffs and shackles, he denied the motion for mistrial but stated that he would consider any special jury instruction that the defense offered. Consequently, the judge instructed the jury, “[t]he fact that a defendant may remain in custody after arrest is not an indication of guilt.”
La.Code Crim.P. art. 775 states, in pertinent part:
|4Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]
In State v. Wilkerson,[4], the defendant claimed that the trial court erred in allowing him to be handcuffed in front of the jury. One afternoon, after court was adjourned, a deputy handcuffed him, and more than half of the jury passed within three to four feet of him. Thus, he claimed that they had seen him. Defense counsel requested a mistrial. But, the trial court denied the request, and the supreme court upheld the trial court’s ruling. The supreme court discussed the standard of review to be applied in such situations:
Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of judicial proceedings. However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner’s past conduct reasonably justifies apprehension that he may attempt to escape.
If the handcuffing is objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court’s reasonable discretion resulting in clear prejudice to the accused.[5] (Citations omitted).
In the present case, we find that the trial court did not abuse its discretion *1265 in denying the motion for mistrial and that the Defendant was not clearly prejudiced, even if he was seen wearing shackles.
Failure to Include a Responsive Verdict
The Defendant claims that the trial court erred in failing to include battery as a responsive verdict and to instruct the jury regarding its definition, since it was a lesser included offense. In support of his argument, he cites La.Code Crim.P. art. 815, which states:
|fiIn all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not guilty.
La.Code Crim.P. art. 814 provides the responsive verdict for attempted second degree murder as: guilty, guilty of attempted manslaughter, guilty of aggravated battery, and not guilty. “This is an exclusive list of responsive verdicts and while the trial court may ‘exclude’ one of the listed responsive verdicts, it cannot add to their number.”[6] Thus, even if requested, it would not have been proper for the judge to include simple battery as a responsive verdict.
CONCLUSION
As the Defendant suffered no prejudice from being seen, by the jury, shackled and La.Code Crim.P. art. 814’s list is exclusive of responsive verdicts, we find that the Defendant’s pro se claims of the trial court’s errors in denying the request for a mistrial and failing to include battery as a responsive verdict lack merit. Furthermore, after reviewing the record, we find that there are no claims which arguably support an appeal. Consequently, we affirm the Defendant’s convictions and sentences and grant counsel’s motion to withdraw.
AFFIRMED; MOTION TO WITHDRAW GRANTED.

. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

. 573 So.2d 528 (La.App. 4 Cir.1990).

. 573 So.2d at 531.

. 403 So.2d 652 (La.1981).

.Id. at 659.

. State v. Langlois, 620 So.2d 1193 (La.App. 4 Cir.), writ denied, 625 So.2d 1042 (La.1993), citing State v. Square, 433 So.2d 104 (La.1983).