JjPLOTKIN, Judge.
Robert B. McBride was convicted of manslaughter, a violation of La. R.S. 14:31, and was sentenced to thirty years imprisonment at hard labor. Defendant appeals his conviction and sentence, asserting eight assignments of error. We affirm defendant’s conviction and amend his sentence for the reasons stated below.

STATEMENT OF THE CASE

On January 14, 1998, defendant was indicted for the second degree murder of Michael L. Gregory, in violation of La. R.S. 14:30.1. The defendant entered a plea of not guilty at his arraignment on January 26, 1998. On April 14, 1998, the trial court conducted a suppression hearing and denied defendant’s motion to suppress statement. The defendant withdrew his not guilty plea and pled guilty to an amended charge of manslaughter on September 4, 1998. The trial court sentenced defendant to serve thirty years at hard labor after a sentencing hearing on November 30, 1998. The defendant objected to the sentence. The defendant subsequently filed a Motion to Withdraw Guilty Plea/Vacate Sentence for New Trial, a Motion to Recuse the District Attorney, and a Motion to Reconsider Sentence. The trial court denied defendant’s motions on February 5, 1999. Thereafter, the defendant was granted an appeal.
| STATEMENT OF FACT
At the hearing on November 30, 1998, Horace Billiot testified that he had worked for the victim at the victim’s bar, “Skimmer’s Bar,” in Port Sulphur. Billiot lived in a camper behind the bar.
Billiot testified that on December 5, 1997, he saw both the victim and the defendant at Skimmer’s Bar. At one point, Billiot witnessed the defendant follow the victim to the restroom. When the victim returned to the bar, the victim stated that the defendant had threatened to kill him, if he did not leave the victim’s girlfriend alone.
Later, Billiot left the bar to go to his camper. Inside his camper, when Billiot got out of the shower he heard a loud noise, then the victim’s girlfriend knocked on his door and said “My God. He shot Mike. Brent shot Mike. I think he killed him.” Billiot then dialed 911 and went to the bar to await the arrival of the police.
The victim’s girlfriend, Deborah Pad-gett, testified that she operated Skimmer’s Bar. Padgett stated that she and the victim had lived together since May 1997. During their relationship, the victim would drink and then hit her. A few days before this incident the victim had hit her, but they had reconciled before this incident.
On the evening of December 5, 1997, she and the victim went to the bar to prepare for a dance to be held there later that night. When they entered the bar, the victim yelled at the defendant to come out from behind the bar, and to stop making himself a drink. The victim then went to the restroom, and the defendant followed. When they returned from the restroom, the defendant left the bar. The victim told |3Padgett that the defendant had threatened to kill him, if he ever touched Pad-gett again.
After awhile, the defendant returned to the bar, and attempted to talk to the victim. The victim told the defendant that it was none of his business and that he and Padgett had worked everything out. Later, the victim again told the defendant to stay out of his business.
Padgett testified that the next thing she saw was the defendant holding a gun to the victim’s temple. She and the victim attempted to talk the defendant into putting down the gun. The defendant then moved the gun to the victim's chest. Pad-gett next heard the gun go off. The victim took a few steps backward and said “You shot me,” before he fell to the floor. Pad-gett went to the victim and found him to still be breathing. She then ran to Billiot’s camper to call 911. Padgett testified that the victim was not in possession of any weapon when he was shot.
*549 Padgett testified that she had never had any romantic relationship with the defendant. She further stated that the defendant and the victim were friends. Padgett never heard the defendant make any threats to the victim, and she had never before seen the defendant act violent or angry. Padgett stated that both the victim and the defendant had been drinking on the night of the incident. The victim drank about two glasses of wine and the defendant had between a fifth and a fifth and a half of vodka. She did not tell the defendant that she and the victim had reconciled.
Roberta Beavers testified that she was working at Skimmer’s Bar on the night of the incident. After the shooting, she observed the defendant bend down and whisper to the victim. The defendant then walked to the bar and emptied the bullets from the gun onto an ice chest, and he placed the gun on the bar.
|4In his statement to the police, the defendant stated that after he tried to talk to the victim about not hitting his girlfriend, the victim knocked him down. The defendant then walked to his house to retrieve a gun, then he returned to the bar. The defendant further stated that he shot the victim, but he did not mean to kill the victim. He just wanted to stop the victim from abusing his girlfriend.
Dr. Edward Shwery was stipulated an expert in the field of clinical psychology. Dr. Shwery testified that he conducted a battery of tests on the defendant after his arrest. Based on the tests, Dr. Shwery found that the defendant has “a chronic mental illness of psychosis.” Specifically, that the defendant displayed characteristics of paranoia, delusional disorder and schizophrenia. Dr. Shwery testified that the defendant was not criminally insane on December 5, 1997, and on that occasion, the defendant was able to distinguish between right and wrong.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

ASSIGNMENTS OF ERROR NUMBERS 1-5

In these assignments, the defendant complains that the trial court erred when it sentenced defendant to thirty years at hard labor. The defendant suggests that the trial court failed to consider the sentencing guidelines and that the sentence imposed is unconstitutionally excessive.
Prior to sentencing the defendant, the trial court conducted an extensive hearing. Witnesses to the shooting testified at the hearing. The victim’s family provided victim impact testimony. The defendant also produced an expert who testified that the defendant has a mental incapacity that may have affected his Lability to understand right from wrong on the date of the shooting. At the end of the hearing, the trial court sentenced the defendant to serve thirty years at hard labor. The trial court gave several reasons for the sentence imposed. The trial court noted the defendant’s age, educational level and work experience. The court stated that the psychological profile indicated that the defendant had an actively paranoid and psychotic personality. However, the court stated “[e]ven with this evaluation the doctor stated that the subject, meaning Mr. McBride, could receive treatment once released from incarceration.” The court further stated that while the defendant pled guilty to manslaughter, it determined that the facts of the case could have supported a verdict of guilty to second degree murder. However, the court also noted that the evidence of defendant’s level of intoxication could negate his ability to form the specific intent to kill or inflict great bodily harm. The court believed that the facts of the case could support a conviction for manslaughter committed during an intentional misdemeanor such as an aggravated assault or an aggravated battery.
*550 Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “ ‘grossly out of proportion to the severity of the crime’ or ‘is nothing more than the purposeless imposition of pain and suffering.’ ” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985)(quoting State v. Brogdon, 457 So.2d 616, 625 (La.1984), cert. denied, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985)). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the incase. State v. Soco, 441 So.2d 719, 720 (La.1983); State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. Quebedeaux, 424 So.2d at 1014; State v. Guajardo, 428 So.2d 468, 473 (La.1983).
In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400, this Court affirmed a thirty-three year manslaughter sentence for a first offender who drove the car but did not pull the trigger in a drive-by shooting. In State v. Maxie, 594 So.2d 1072 (La.App. 3 Cir.1992), unit denied, 598 So.2d 372 (La.1992), the Third Circuit affirmed a statutory maximum sentence of twenty-one years at hard labor for manslaughter for a twenty-two year old defendant with no prior convictions who shot the victim four times. In State v. King, 563 So.2d 449 (La.App. 1 Cir.1990), unit denied, 567 So.2d 610 (La.1990), the First Circuit affirmed a twenty-one year maximum sentence for a defendant who fired one shot at point blank range killing his estranged wife.[1]
The record reveals that the trial court complied with the requirements of La.C.Cr.P. article 894.1 and set forth several reasons to support the defendant’s sentence of thirty years at hard labor. The trial court recognized that the defendant was extremely intoxicated at the time of the shooting. However, the court noted that the defendant left the bar and later returned with the gun, suggesting that the 17defendant had the ability to think about his future actions. The trial court found that in the light of the facts, a jury could have found the defendant guilty of second degree murder. However, the trial court concluded that the evidence better suited a conviction based upon an intentional misdemeanor.
In determining whether defendant’s thirty year sentence is excessive, we consider the mitigating circumstances surrounding this case. We note that defendant is a first-time offender. Defendant cooperated with police and admitted to shooting the victim. Defendant stated to police that he had not meant to kill the victim, but meant to wound the victim in the shoulder. Defendant shot the victim a single time. Additionally, based on psychiatric tests, the defendant had a mental defect where the defendant displayed characteristics of paranoia, delusional disorder and schizophrenia. Furthermore, at the conclusion of the hearing on November 30, 1998, defendant expressed remorse through the following statement to the trial court: “I am truly sorry, I apologize to my family, I wish I could undo it but I can’t. Mike was my friend, I did not realize what I was doing, but I am responsible. I am so very sorry.” While defendant is deserving of punishment, his sentence should reflect the foregoing considerations.
*551 Accordingly, we find that the trial court erred in denying defendant’s motion to reconsider the sentence. Therefore, we reduce defendant’s sentence to fifteen years at hard labor without the benefit of probation, parole or suspension of sentence.

\ ASSIGNMENTS OF ERROR NUMBERS 6-8

The defendant also seeks review of the trial court’s denial of his Motion to Withdraw Guilty Plea/Vacate Sentence for New Trial and Motion to Recuse the District Attorney.
Code of Criminal Procedure article 559 provides in pertinent part that “[t]he court may permit a plea of guilty to be withdrawn at any time before sentence.” However, the Louisiana Supreme Court in State v. Lewis, 421 So.2d 224 (La.1982), concluded that a trial court may permit the withdrawal of a guilty plea after sentencing when the trial court finds that the guilty plea was not entered freely and voluntarily or that the Boykin colloquy was inadequate and therefore that the plea is constitutionally infirm. The withdrawal of a guilty plea is within the discretion of the trial court, and is subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Johnson, 406 So.2d 569, 571 (La.1981).
For a guilty plea to be found valid, there must be a showing that the defendant was informed of and waived his constitutionally guaranteed right to trial by jury, right of confrontation and right against compulsory self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (La.971). However, the entry of a knowing and intelligent plea of guilty involves more than an understanding and a waiver of the basic triad of rights. In determining whether the defendant’s plea is knowing and voluntary, the court must not only look to the colloquy concerning the waiver of rights, but may also look at other factors which may have a bearing on the decision. State ex rel. LaFleur v. Donnelly, 416 So.2d 82, 84 (La.1982); State v. Galliano, 396 So.2d 1288, 1290 (La.1981).
In the case at bar, the defendant argues that the trial court should have | ^granted his motion to withdraw his guilty plea as he was. not informed of the District Attorney’s relationship with the victim until after he entered his plea of guilty. The defendant suggests that had he known of the relationship between the District Attorney and the victim, he would not have pled guilty to the manslaughter charge. The alleged relationship between the District Attorney and the victim arose as a result of the District Attorney’s involvement in two personal injury lawsuits filed by the victim prior to his death. The defendant also uses this alleged relationship in his argument in support of his motion to recuse the District Attorney.
La.C.Cr.P. art. 680 provides for the re-cusal of the district attorney:
A district attorney shall be re-cused when he:
(1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice;
(2) Is related to the party accused or to the party injured, or to the spouse of the accused or party injured, or to a party who is a focus of a grand jury investigation, to such an extent that it may appreciably influence him in the performance of the duties of his office; or
(3) Has been employed or consulted in the case as attorney for the defendant before his election or appointment as district attorney.
The burden of proving a personal interest under art. 680(1) rests with the defendant, who must prove it by a preponderance of the evidence. State v. Bourque, 622 So.2d 198, 216-17 (La.1993). The defendant *552 must prove that the District Attorney has a personal interest in conflict with the fair and impartial administration of justice. State v. Givens, 98-0007, p. 14 (La.App. 4 Cir.12/8/99), 750 So.2d 242, 251. Courts have required recusal under this article when it is shown that the District Attorney has a personal interest in the defendant’s case based upon a business relationship with the defendant, personal animosity between |inthe District Attorney and the defendant, and the District Attorney’s victimization by the criminal activity subject to investigation. See State v. Hughes, 587 So.2d 31 (La.App. 2 Cir.1991), unit denied, 590 So.2d 1197 (La.1992); Parkerson v. Norris, 529 So.2d 1392 (La.App. 2 Cir.1988), writ denied, 530 So.2d 552 (1988); State v. Snyder, 256 La. 601, 237 So.2d 392 (1970). The defendant is entitled to a hearing on the motion to recuse a District Attorney. State v. McCloud, 99-K-0283 (La.10/1/99), 745 So.2d 1176. “[The defendant] may appeal from any adverse ruling on whether the interest of justice required the disqualification of one or more prosecutors and whether their continued participation in the case provides grounds for a new trial.” Id.
A review of the record reveals that the State and the defendant entered into certain stipulations concerning the District Attorney’s involvement in the victim’s personal injury lawsuits. The parties stipulated that the victim’s primary counsel in the lawsuits contacted the District Attorney to assist with jury selection when the cases went to trial.
Defendant timely raised the issue of re-cusal of the District Attorney post-trial. The trial court denied defendant’s motion. At the hearing on the motion of recusal, the trial court stated:
Mr. Bubrig’s representation, if it is in fact representation, but his listing of counsel was in an unrelated matter although the individual is the same, it was not the cause and it was not the case. It had to do with a civil lawsuit over the explosion at his employment. I don’t think that that is what was contemplated by the article [La.C.Cr.P. art. 680] and I think it is beyond what the Valdes [State v. Valdes, 547 So.2d 9 (La.App. 4 Cir.1989), writ denied, 552 So.2d 379 (La.1989).] case talks about in the motion to withdraw the plea....
I don’t think it is a factor that should be considered in determining the free and voluntariness of the defendant’s plea because he was Boykinized, I went over his rights, he gave up his rights.
^L^Here, the District Attorney was hired to prospectively assist jury selection. However, the two suits were settled and, as a result, the District Attorney did not perform any services on behalf of the victim and did not receive any compensation.
The defendant did not meet his burden of proving that the District Attorney had a personal interest in his case. Accordingly, the action of the District Attorney does not entitle defendant to a new trial. The trial court correctly denied the defendant’s motion to recuse. Likewise, the trial court properly denied defendant’s motion to withdraw the guilty plea based upon the alleged relationship between the District Attorney and the victim.
These assignments are without merit.

CONCLUSION

For the foregoing reasons, we affirm defendant’s conviction and amend the sentence to fifteen years imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.

CONVICTION AFFIRMED; SENTENCE AMENDED.

11 McKAY, J.
I would grant rehearing for the following reasons. The defendant was charged with a 14:30.1 second degree murder. He was allowed to plea without a sentence guarantee, to a 14:31 manslaughter. Although the defendant had no prior convictions he was sentenced to thirty years (14:31 carries a maximum of 40 years). In *553 his appeal the defendant raised among other things the issue of excessive sentence.
I initially agreed with the majority opinion concerning the excessive sentence issue because of the mitigating factors in the case (alcohol consumption, cooperation etc.); this opinion may have been reinforced due to the failure of the state to present argument on the hearing date. However, after reviewing the state’s brief on the motion for rehearing and reviewing State v. Cook, 95-2784 (La. 5/31/96), 674 So.2d 957, as well as State v. Square, 433 So.2d 104 (La.1983) and State v. Lobato, 603 So.2d 739 (La.1992), I am of the opinion that the trial court should be affirmed.

. However, the appellate court amended the sentence to twenty-one years to be served without benefit of probation, parole or suspension of sentence for five years.