PAUL A. BONIN, Judge.
I,Ronald Sims was charged with the second degree murder of Brandon Franklin. See La. R.S. 14:30.1. Mr. Sims opted for a bench trial, and, on November 18, 2010, the district judge found him guilty of the responsive verdict of manslaughter. See La.C.Cr.P. art. 814 A(3); La. R.S. 14:31. The district judge then sentenced him to a term of thirty years in the Department of Corrections, without the benefit of parole or suspension of sentence.[1] Mr. Sims’s sole assignment of error is that his sentence is excessive.
After our review,[2] we conclude that the district judge did not abuse the considerable discretion entrusted to him in imposing this sentence and that the sentence imposed does not violate Mr. Sims’ constitutional protection against an excessive sentence.
We explain our conclusions in greater detail below.
We first turn to describe the facts of the offense for which Mr. Sims is being punished.
Mr. Sims had been living with his child and Ivoronne Fortenberry, his girlfriend and the mother of his child, for approximately one and one half years. Ms. For-tenberry had another child, who also resided with them, fathered by the victim, Mr. Franklin.
The day before Mother’s Day in 2010, Ms. Fortenberry asked Mr. Sims to leave their house. Mr. Sims was about to go to work a night shift at that time anyway, so he went to work. When Mr. Sims returned to their house the next day, however, Ms. Fortenberry did not want to see him and called the police, who told him that he had to leave. Mr. Sims did not argue with the police and left. The police officers told him that he could call them for an escort when he returned for his things.
Later that day, Mr. Sims returned to the house to retrieve his belongings; he did not call for a police escort. By that time, Ms. Fortenberry had removed Mr. Sims’ clothing to the shed outside, and Mr. Franklin had arrived to change the locks. *711 When Mr. Sims came to the house, Ms. Fortenberry did not let him in and directed him to the shed.
Mr. Franklin was standing behind Ms. Fortenberry listening to what she told Mr. Sims. As soon as Ms. Fortenberry shut the door, Mr. Franklin ran outside through the back door towards the shed, approached Mr. Sims, and said, “What |3you gonna’ do now?”; “You need to get your stuff outta here.”; “And that gun, you got on you, I’ma make you use it today.” While saying this, Mr. Franklin was pressing his body up against Mr. Sims’ and shoving him. Mr. Sims remained on his phone and said nothing in response. Ms. Fortenberry physically pulled Mr. Franklin away from Mr. Sims before Mr. Franklin returned to the house.
Once inside the house, Mr. Franklin asked Ms. Fortenberry whether there were supposed to be police present. When Mr. Sims knocked on the door a second time, Ms. Fortenberry asked him where the police were. Mr. Sims replied that he did not need the police. Neither Ms. For-tenberry nor Mr. Franklin called the police at that point.
Mr. Sims knocked on the door a second time, asking for his television. Ms. For-tenberry told him he was not getting it and shut the door on him. Mr. Franklin was again standing in the doorway behind Ms. Fortenberry during her exchange with Mr. Sims.
Mr. Sims knocked on the door a third time, this time asking for his PlayStation. Ms. Fortenberry closed the door, gathered the game console, and then handed it to Sebron Magee, Mr. Sims’ Mend who had come to help him collect his belongings.
When the door opened this final time, all four individuals were standing in the doorway, including Mr. Franklin and Mr. Sims. Mr. Franklin and Mr. Sims starting arguing. The two men argued for a few minutes before Mr. Sims pulled a RGlock pistol from his waistband. Mr. Sims owns a firearm because his job requires him to work late nights.
As soon as the gun came out, Mr. Magee grabbed Mr. Sims’ arm and held the gun down. Mr. Magee told Mr. Sims that it is not worth it, that he should just leave. Mr. Magee testified that after saying this, he turned to walk back to his car, and he heard a shot fired. He then ran to his car and drove away. Mr. Magee heard only one shot fired.
When Mr. Sims started shooting, Ms. Fortenberry moved to her right, back inside the residence. Ms. Fortenberry testified that she just saw Mr. Sims shooting and Mr. Franklin backing up. Ms. For-tenberry was unable to testify as to how many shots were fired. But the evidence shows that Mr. Franklin was shot thirteen times. Ms. Fortenberry’s two children were home at the time of the shooting.
Two hours later, Mr. Sims called the police to turn himself in. When he met the police officers at a gas station, the designated location, the police officers found his Glock in his car.
The autopsy report showed that Mr. Franklin died from the gunshot wounds.
II
Mr. Sims’ assignment of error focuses on his claim that the sentencing judge did not adequately consider the statutory guidelines set out in La.C.Cr.P. art. 894.1, which resulted in under-weighing sentence-mitigating characteristics associated with Mr. Sims and in over-weighing sentence-aggravating characteristics associated with the victim. Mr. Sims also argues for the first time |Bon appeal that the sentencing judge neglected to satisfactorily express the factual basis for the sentence *712 imposed. See La.C.Cr.P. art. 894.1 C (“The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.”)
A
Excessive punishment is prohibited by the federal and state constitutions. The Eighth Amendment provides, “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” The prohibition of cruel and unusual punishments “prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed.” Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
La. Const, art. I, § 20 expressly prohibits excessive punishment: “No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment.” A punishment will be found excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. See State v. Bonanno, 384 So.2d 355, 357 (1980); see also State v. Cann, 471 So.2d 701, 703 (La.1985) (To be found excessive, the penalty must be “so grossly disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice”).
We review a challenge to the excessiveness of the sentence under the abuse of discretion standard. State v. Square, 433 So.2d 104, 110 (La.1983). When | (¡reviewing a sentence, “the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.” State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462.
As a general rule, the factors listed in La.C.Cr.P. art. 894.1 that must be given weight in determining whether a defendant should be placed on probation[3] or have his sentence suspended “[ajnalogically ... provide guidance as to whether the sentence should be closer to the maximum rather than to the minimum statutory range of sentence.” State v. Sepulvado, 367 So.2d 762, 767-768 (La.1979). The criteria in Article 894.1 “are similar to those evolved by other courts in other American jurisdictions with a constitutional or statutory duty to review excessiveness” and “provide appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.” Sepulvado, 367 So.2d at 769.
In discharging our review function, we first look to whether the sentencing judge adequately considered the guideline factors under La.C.Cr.P. art. 894.1. See State v. Batiste, 06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820. Our purpose is not to enforce mechanical compliance by a sentencing judge, but to ensure that there is a factual basis for the sentence imposed. Id.; see also State v. Lanclos, 419 So.2d 475 (La.1982). If we find that the district court adequately considered the factual basis and individual considerations for the sentence, “then 17review will focus upon whether the trial court’s large discretion has been abused.” State v. Saunders, 393 So.2d 1278, 1281 *713 (La.1981), citing State v. Spencer, 374 So.2d 1195 (La.1979).
B
We specially note at the outset of our discussion of Mr. Sims’ complaint about the sentencing judge’s compliance with Article 894.1 two important aspects of this case. First, the sentencing judge was the trier of fact who returned a verdict lesser than the offense charged; thus the sentencing judge had already well-considered many of the numerous guidelines or factors, especially those tending to mitigate the punishment. Second, the sentencing judge not only ordered a pre-sentence investigation report[4] but also conducted a sentencing hearing at which Mr. Sims was permitted to, and did, offer witnesses to testify to mitigating considerations.
During the sentencing hearing, the Reverend Joseph Merrill, the victim’s pastor, as well as Mr. Franklin’s two brothers and his father testified that Mr. Franklin was a loved and respected member of his community. Mr. Franklin was a band leader and taught music to children. Three thousand people were in attendance at Mr. Franklin’s funeral. All testified as to how much Mr. Franklin was loved and how he will be missed. One of Mr. Franklin’s brothers and the Reverend Merrill requested specifically that Mr. Sims be given the maximum punishment available, which is forty years.
18With respect to mitigation, Mr. Sims’ two aunts testified that Mr. Sims is a loving and caring person and that two wrongs do not make a right and asked that he be given a second chance. One of his aunts was the person who raised him because Mr. Sims’ parents died when he was young. She testified that taking Mr. Sims away from her would be devastating to her.
Ms. Fortenberry, the girlfriend of both men and the mother of a child by each, also took the stand at the sentencing hearing. She testified that her children, including her son fathered by Mr. Franklin, asked her every day when they can go get their daddy out. She testified that Mr. Sims’ actions that day were completely out of character and that he deserves a second chance. At the time of the sentencing hearing, Mr. Sims and Ms. Fortenberry were engaged.
Mr. Sims himself took the stand during the sentencing hearing as well. There, he stated that there is no question that he shot Mr. Franklin, but that he feels very sorry about it because nobody deserves to lose his life.
Immediately before sentencing Mr. Sims, the sentencing judge expressed himself:
This is a sad day. This is truly a sad day. One young man’s life has been taken and another stands before this Court for sentencing in connection with his untimely death. You know every human life is a treasure. And the loss, particularly a premature loss of a human life, is an unspeakable tragedy, particularly when it is a result of violence — an unjustified violence. I didn’t know Brandon Franklin, but I have come to know through the testimony of those who did know him that he, indeed, was a beloved person in his community. He was a son; he was a father; he was a friend; he was a musician; a band leader; a mentor; many things to many people. By all accounts, a bright and promising future. 19Your rage, your *714 temper, your blind emotion took all those possibilities away from him.
There was some suggestion during the course of this trial that the actions you took you felt were justified because of some fear you felt for your personal safety. You fired once, there is no further concern for your personal safety, even twice. But you fired a third, a fourth time, and a fifth time. You kept on firing. Without me being a medical professional, I certainly thought you were firing at that point in time to a lifeless body, one that posed no continuing threat to you. You’ve committed the ultimate sin, and it’s so tragic that you took that young person’s life, and it’s deeply tragic, in this Court’s mind, for me to have to impose a sentence that is commensurate with the crime you have committed. You have committed the ultimate sin. There is no justification for it.
While it is true that the sentencing judge did not mention the mitigating factors that Mr. Sims’ imprisonment would be a hardship on his dependent child, or that Mr. Sims attempted to cooperate with the police by turning himself in, or that he had no history of prior criminal conduct — other than throwing a football through a window as a child, it is also true that the district judge did not mention other potentially aggravating factors: that there were other people in the house who could have been hurt or that a dangerous weapon had been used. See La.C.Cr.P. art. 894.1 B(5, 10, 28, 31). The court, instead focused on La.C.Cr.P. art. 894.1 A(S), B(9), and B(24).
La.C.Cr.P. art. 894.1 A(3) provides that “a court should impose a sentence of imprisonment if any of the following occurs: .... (3) A lesser sentence will deprecate the seriousness of the defendant’s crime.” The sentencing judge found that Mr. Sims had committed “the ultimate sin.” And he declared that he was required “to impose a sentence that is commensurate with the crime.”
|1flLa.C.Cr.P. art. 894.1 B(9) provides that another factor to be accorded weight is that “[t]he offense resulted in a significant permanent injury or significant economic loss to the victim or his family.” The fact that Mr. Franklin died as a result of Mr. Sims’ actions is clearly a large factor taken into account by the district court. The sentencing judge did not, and should not have, overlooked the severe impact Mr. Franklin’s death was having on his family and community.
Another factor to be considered by the sentencing court is whether the defendant “acted under strong provocation.” La. C.Cr.P. art. 894.1 B(24). The sentencing judge stated that even if the first few shots had been in self-defense, Mr. Sims’ continuing to shoot at Mr. Franklin after he was no longer threatened deprived Mr. Sims of this mitigating factor. The factor was, therefore, properly considered.
Mr. Franklin’s age also weighed heavily on the court’s decision, as the sentencing judge noted that Mr. Franklin had a bright and promising future and that Mr. Sims’ action took all that away from him. The district judge stated, “This is truly a sad day. One young man’s life has been taken and another stands before this Court for sentencing.” But the court at the same time also took into account Mr. Sims’ age as well. Age, while not a factor listed in Article 894.1, may be considered because the list in the Article is not exhaustive. See Schlosser, La.Crim. Trial Prac. § 26:3 (4th ed.).
Although the sentencing judge did not, and need not, list every factor in Article 894.1, it is not necessary for every factor in that article to be enumerated, ^especially where all the mitigating factors were brought to the court’s attention. See *715 Square, 433 So.2d at 110, citing State v. Bradley, 414 So.2d 724 (La.1982). Additionally, it would be inappropriate to remand for resentencing based on the court’s failure to list all the criteria listed in Article 894.1:
In cases in which the trial court has left a less than fully articulated record indicating that it has considered not only aggravating circumstances but also factors militating for a less severe sentence, State v. Franks, 373 So.2d 1307, 1308 (La.1979), a remand for resentenc-ing is appropriate only when “there appear[s] to be a substantial possibility that the defendant’s complaints of an excessive sentence ha[ve] merit.” State v. Wimberly, 414 So.2d 666, 672 (La.1982).
State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608.
There is nothing in this record which suggests to us that the sentencing judge did not, first, afford Mr. Sims ample opportunity to present mitigating facts for the sentencing judge’s conscientious decision, and, second, adequately consider the guidelines of Article 894.1. The sentencing judge expressed the factors that weighed most heavily on his decision. And, as we discuss, post, the sentence does not appear to be excessive. We, therefore, do not find that the district court failed to consider sufficiently the factors in Article 894.1.
C
Even though we find nothing in this record to suggest that the sentencing judge failed to consider mitigating factors in the sentence, we nevertheless compare the sentence imposed on Mr. Sims to similar sentences to see if the sentencing judge abused his discretion.
In State v. McBride, 01-0588 (La.2/8/02), 807 So.2d 836, the Supreme Court overturned this court’s judgment reducing the defendant’s sentence from thirty years to fifteen years. The defendant had shot and killed the victim in a bar while trying to stop the victim from abusing the victim’s girlfriend. See State v. McBride, 99-2904, p. 4 (La.App. 4 Cir. 11/29/00), 776 So.2d 546, 549. In overturning this court’s decision, the Supreme Court stated, “On sentence review the only pertinent question is ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ” McBride, 807 So.2d 836 quoting State v. Cook, 95-2784, p. 4 (La.5/31/96), 674 So.2d 957, 959.
In State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, this court upheld the thirty-three year sentence of a sixteen-year-old, who was charged with second-degree murder and convicted of manslaughter. The defendant was the driver in a drive-by shooting. He did not shoot a firearm, there was no evidence that he knew his passenger would shoot anyone, and this was his first offense; yet he was sentenced to seven years below the maximum. See Bowman, p. 14, 677 So.2d at 1101. This court affirmed the sentence because the district court “adequately complied with La.C.Cr.P. art. 894.1 by stating both mitigating and aggravating factors.” Bowman, p. 15, 677 So.2d at 1102. The district court took into account the defendant’s youth, as well as the fact that he was a principal to the crime and that the jury verdict of manslaughter reflected his reduced culpability. Id.
In State v. Jefferson, 02-1159 (La.App. 4 Cir. 12/4/02), 834 So.2d 572, the defendant was charged with first-degree murder, convicted of manslaughter, and sentenced under La.C.Cr.P. art. 893.3 to twenty-five years at hard labor. The defendant shot the victim during an argument when the victim was drunk and the *716 defendant was relatively sober. This court found no abuse of discretion. Id., p. 9, 834 So.2d at 577-578.
Based upon this comparative review of other convictions for manslaughter involving relatively youthful offenders with scant criminal backgrounds, we do not discern any disproportionate treatment of Mr. Sims which leads us to conclude that the sentencing judge abused his considerable discretion in sentencing.
DECREE
In the absence of errors patent and of any assignment of error, we affirm the conviction of Ronald Sims for the crime of the manslaughter killing of Brandon Franklin. Because we find no abuse of the sentencing judge’s considerable discretion, we conclude that there has been no abuse of discretion and that the sentence imposed does not violate Mr. Sims’ constitutional protections and, accordingly, affirm the sentence imposed.
AFFIRMED

. Initially, the sentence as reflected in the minute entry caused us to question whether there existed an error patent because the penalty for manslaughter does not provide for the "without benefit of parole or suspension of sentence” except when the victim was under the age of ten years old. See La. R.S. 14:31 B. The District Attorney filed a motion under La.C.Cr.P. art. 893.3, however, which authorizes such restriction under certain circumstances. Mr. Sims did not assign as error that aspect of the sentence. See La.C.Cr.P. art. 902(1). Because we conclude that there is no error patent with respect to the sentence and that there was no assignment of error, we express no view as to the imposition of the restriction.

. We have, as we always do, reviewed the record for errors patent with respect to the conviction as well and detected none.

. Here, as pointed out in n. 1, ante, Mr. Sims did not object in the trial court to the Article 893.3 motion and has not assigned error in the appellate court to the use of Article 893.3. As a result, probation or suspension of sentence is not an actual consideration in imposing sentence.

. The presentence investigation report was not, however, referenced and Mr. Sims did not ask that it be included in the record on appeal.