(ON REMAND FROM LOUISIANA SUPREME COURT)
PAUL A. BONIN, Judge.
1! Rejecting his claim of self-defense in the killing of Brandon McCue, the jury found Christopher Wells guilty of manslaughter, a verdict which was responsive to the charge of second-degree murder. On his appeal to us, we found that under the well-known Jackson v. Virginia[1] standard the evidence was sufficient to support a finding by the jury of his guilty beyond a reasonable doubt, but we nonetheless reversed his conviction and ordered a new trial because of instructional error. See State v. Wells, 11-0744 (La.App. 4 Cir. 7/11/14), 156 So.3d 150 (Landrieu, J., dissenting).[2] At that time we pretermitted consideration of his remaining twenty-two assignments of error. Id., p. 3, 156 So.3d at 153, n. 3.
On the prosecution’s application, the Supreme Court granted a writ of certiorari. See State v. Wells, 14-1701 (La.4/17/15), 168 So.3d 389. We were then reversed by the Supreme Court. See State v. Wells, 14-1701 (La.12/8/15), — So.3d —, 2015 WL 8225228. The Supreme Court remanded the appeal to us for | ^consideration and disposition- of the theretofore preter-mitted assignments of error. Id., p. 8. — So.3d at —.
Following remand, we invited the parties to the appeal to refresh their briefing with new-authorities.- We now decide the outstanding assignments not already disposed of by the Supreme Court’s opinion. We generally cluster these assignments into four categories.
The first category involves Mr. Wells’ substantial complaints about possible Brady and Giglio violations. We have concluded that the proper disposition of these complaints is to defer them to post-conviction proceedings.
The second category involves claims of instructional errors, which claims were not disposed of in our original opinion. We do not find any reversible error in the jury instructions.
The third category includes several evi-dentiary rulings. We have subjected all of those rulings to review Under an abuse-of-discretion standard. And we decide that *1135 some of the rulings were not erroneous and others, which were erroneous, do not require reversal.
The fourth category addres'ses five remaining and unrelated assignments. The first is Mr. Wells’ claim that a conflict of interest existed, demonstrated by the representation of both Mr. Wells and the witnesses testifying against him by the Orleans Public Defenders’ Office. Because Mr. Wells did not object and his representation was not compromised, we find no actual conflict existed. Second, Mr. Wells argues his right to confrontation was violated by the introduction of 13evidence not authored, or conducted by. .the testifying witnesses. Under Crawford and its progeny, we do not find the evidence testimonial and thus no confrontation violation occurred. Third, Mr.. Wells claims this court, in a prior order, erred by failing to consider certain statements from jurors about misconduct and misunderstandings affecting the verdict. Because we find our previous decision correct, we do not overturn it.
Next, Mr. Wells claims that his sentence of twenty-five years at hard labor is excessive and violates his constitutional protection against an excessive sentence. We have reviewed this assignment under the particularized Dorthey abuse-of-discretion standard and conclude that the sentence is not excessive. The final assignment is Mr. Wells’ objection that the record on appeal is incomplete. We have considered that complaint de novo because it was first made here. We find that the record is sufficiently complete to ensure that Mr. Wells’ right to judicial review has been adequately vindicated.
Accordingly, considering the earlier dispositions of his assignments of error and the lack of any reversible error identified in this direct appeal, we affirm Mr. Wells’ manslaughter conviction in the killing of Brandon McCue as well as the sentence imposed. We explain our decision in greater detail below.
I
In this Part, we first briefly describe the pertinent facts. For á fuller discussion, see State v. Wells, 14-1701 (La.12/8/15), — So.3d —, 2015 WL 8225228; State v. Wells, 11-0744 (La.App. 4 Cir. 7/11/14), 156 So.3d 150.
|4Mr. Wells does not dispute that he shot and killed the decedent, Brandon McCue, colloquially known as “Big Herb.” He also does not dispute that he went to .the trailer park on Chef Menteur Highway with the intention of .buying marijuana from Big Herb.; Mr. Wells droye twice to the trailer park; the first time he was alone, and the second time he was accompanied by . Derrick Richard, who did not .testify at trial.
Big Herb’s brother, Alton McCue, known as “Pound,” was present at the time of the shooting. John Hooks Jr. testified that' he was also- present at the time, although his presence is disputed by Mr. Wells but corroborated by Pound. When Mr;- Wells arrived the séeond time, he engaged in a discussion with Big Herb, although the content of that discussion is in dispute. At the time of the discussion between the two men, and at the time of the shooting, Big Herb was in possession of a 9mm firearm.
After the shooting, Mr'. Wells grabbed Big Herb’s gun and drove-away. Because Mr. Wells had lived with the McCue family for a period of time, Pound identified him as the shooter to" police. He was apprehended later that evening,
II
In this Part, we. set forth Mr. Wells’ several claims which allege violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 *1136 L.Ed.2d 104 (1972), and Napue v. People of State of Ill., 360 U.S. 264, 79 S.Ct.1173, 3 L.Ed.2d 1217 (1959).
Is A
Mr. Wells’ contends that the prosecution in this case failed to timely turn over material evidence favorable to his defense. Specifically, Mr. Wells claims the prosecution withheld (1) Pound’s statement that Big Herb was in possession of a gun at the time of the shooting; (2) evidence that Big Herb fired his gun at the time; (3) Pound’s statement that Mr. Wells repeatedly asked if Big Herb was going to shoot him; (4) the pathologist’s statement that Big Herb’s injuries could be consistent with Mr. Wells’ self-defense claim; (5) evidence that John Hooks had been coerced into testifying; and (6) evidence that someone had a contract out on Big Herb’s life.
By way of background, the record reflects that throughout the year preceding trial, the defense made numerous requests for the prosecution to comply with its Brady obligations. On each occasion, the trial judge ordered the prosecution to review its file and make the appropriate disclosures.
On the first day of trial, but before voir dire, the prosecution provided the defense with three Brady notices. The first notice was that the pathologist, Dr. Paul McGar-ry, had relayed to the prosecutor that Big Herb’s injuries could be consistent with Mr. Wells’ claim of self-defense. Dr. McGarry had apparently revealed this information only the evening before. The second and, third notices regarded the statements of Pound, Big Herb’s brother, and the prosecution’s main |r,eyewitness to the shooting.[3] Pound had informed the prosecution that, before Mr. Wells arrived on the scene, he, Big Herb, and some of their friends had been smoking marijuana. Pound also stated that he and Mr. Wells had previously been involved in the use and sale of marijuana.
Pound also informed the prosecution that, immediately before the shooting, Mr. Wells and Big Herb were arguing about a 9mm firearm in Big Herb’s possession. Upon hearing that Big Herb was in fact in possession of a gun at the time of the shooting, defense counsel expressed surprise that the prosecution would have waited to.reveal this evidence until the day before trial. Pound, however, had apparently given his statement about the 9mm only the day before. The prosecution appeared to acknowledge that Pound had not mentioned a gun in prior statements, but only because he was not asked. Notably, defense counsel argued that, if Pound had in fact previously stated that Big Herb was in possession of'a gun at the time, “we don’t just have suppression for a few days, we have suppression for two years.” The trial judge found the allegation “speculative!; ■]” and found that because there was no proof that Pound revealed this information to the prosecution at an earlier time, there was nothing for her to rule on.
At that point, defense counsel reurged its motion to compel the prosecution to comply with its obligations under Brady and its progeny, especially in light of the several different prosecutors who had presided over the case at one time or |7another. The trial judge asked the prosecutor if he was in compliance, to which he replied in the affirmative, confident that he had reviewed the entirety of the file. The trial judge also instructed the prosecutor to review the detective’s file for possible Brady material.
On the third day of trial, after Pound and Mrs. McCue had testified, the prose *1137 cutor revealed that, upon his recent review of notes from previous interviews, Pound had in fact stated on two.-.prior occasions that Big Herb was in possession of a gun at the time of the shooting. The interviews occurred in 2008 and 2009, and had been conducted by prior prosecutors. Defense counsel moved for a mistrial, citing several previous Brady requests and at least one instance where the defense specifically requested any evidence that Big Herb possessed a gun. The trial judge stated that “the Brady violation is there” and agreed that the information should have been disclosed earlier, but denied the motion.[4]
Later that day, the prosecution called John Hooks to testify about what he observed the day of the shooting. On cross-examination, when asked if he was told that he would violate his probation if he did not testify, Mr. Hooks replied in the affirmative. After Mr. Hooks’ testimony, defense counsel argued that this previously undisclosed evidence constituted a Gig-lio violation. He moved for a mistrial, which was denied.
|sOn the fourth day of trial, after, both sides had rested, the prosecution presented the defense with thirteen pages of handwritten notes from Pound’s prior interviews.’ Along with the statement about the 9mm, the notes revealed Pound’s observation of Mr. Wells repeate&y asking Big Herb if Big Herb was going to shoot him, and revealed that Big Herb believed someone had a contract out on his life. Defense counsel again moved for a mistrial, which the judge denied.
' Mr. Wells claims that in light of its pertinence to his theory of self-defense and its potency as , impeachment evidence, the foregoing information is. material under Brady and its progeny. Moreover, Mr. Wells contends that the trial judge should have granted a mistrial, in light of her finding that a Brady violation occurred.[5]
B
“[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Brady, 373 U.S. at 87, 83 S.Ct. 1194. The Brady rule encompasses not only exculpatory evidence but impeachment evidence where the credibility or reliability of the testifying witness may be determinative of guilt or innocence. See U.S. v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); State v. Sparks, 88-0017, p. 67 (La.5/11/11), 68 So.3d 435, 485. Brady also requires the disclosure of evidence concerning a promise of leniency or immunity to a material witness in exchange for his testimony at trial. Giglio, 405 U.S. at 154-55, 92 S.Ct. 763. Relatedly, a prosecutor is prohibited from knowingly allowing a state witness to give false testimony without correction, even if the false testi *1138 mony was unsolicited. See Napue, 360 U.S. at 269-72, 79 S.Ct. 1173.
Importantly, the state is not absolved of its duties under Brady simply because an individual prosecutor does not possess or have knowledge of the evidence. See Giglio, 405 U.S. at 154, 92 S.Ct. 763; Kyles v. Whitley, 514 U.S. 419, 437, 115 5.Ct. 1555, 131 L.Ed.2d 490 (1995) (“[T]he individual prosecutor has á duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.”). And, beyond their duties under federal law, prosecutors are bound by the Louisiana Rules of Professional Conduct to disclose material evidence favorable to the defense. See Rule 3.8(d), Rules of Professional Conduct (“The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating’ information known to the prosecutor.,.. .”).[6] Thus, a prudent prosecutor errs on the side of disclosure when confronted with possible Brady evidence. See Kyles, 514 U.S. at 439-40, 115 S.Ct. 1555 (“This means, naturally, 11flthat a prosecutor anxious about tacking too close to the wind will disclpse a favorable piece of evidence. ... The prudence of the careful prosecutor should not therefore be discouraged.”).
Only upon a finding that the undisclosed evidence is material, however, will a new trial be required. See Giglio, 405 U.S. at 154, 92 S.Ct. 763. The mere possibility that a piece of undisclosed evidence might have helped the defense or might have affected the outcome of the trial, does not establish “materiality” under the Fourteenth Amendment. See U.S. v. Agurs, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Rather, evidence is material “only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (adopting materiality test from Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A “reasonable probability” is a probability sufficient to undermine confidence in the outcome. See id. In other words, to prevail on his claim, Mr. Wells need not show that he more likely than not would have been acquitted had the new evidence been admitted, but rather must show only that the evidence is sufficient to undermine confidence in the verdict. See Wearry v. Cain, 577 U.S. —, 136 S.Ct. 1002, 1007, 194 L.Ed.2d 78 (2016) (citing Smith v. Cain, 565 U.S. —, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012)).
Notably, the materiality determination requires evaluating each piece of evidencé cumulatively rather than in isolation. Spe Wearry, 577 U.S. at —, 136 S.Ct. at 1007; see also Kyles, 514 U.S. at 441, 115 S.Ct. 1555.
Ju
We do specifically highlight that, despite several defense requests for Brady material prior to trial, including a specific request for any evidence, that Big Herb was in possession of a gun at the time, the *1139 evidence disclosed by ' the prosecution trickled in at a listless' and indifferent pace, with the final disclosure revealed after both sides had rested. And we note that late disclosure, in addition to nondisclosure, of favorable evidence may- also require reversal, if the timing significantly affected the defendant’s ability to effectively present the material. See State v. Coleman, 14-0402 (La.2/26/16), 188 So.3d 174; State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545.
To be sure, we are not unmindful of the storied, shameful history of the local prosecuting authorities’ noncompliance with Brady, See, e.g., Smith v. Cain, 565 U.S. —, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012); Connick v. Thompson, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417. (2011); Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). And this is not the first case in which the current office has produced, discoverable evidence “in dribs and drabs.” State v. Hampton, 15-1222, p. 4 (La.App. 4 Cir. 12/23/15), 183 So.3d 769, writ den. 16-0124 (La.3/14/16), 189 So.3d 1073 (unpub) (“[f]or reasons not at all clear from the record” stretched out over many months production of discoverable DNA evidence in prosecution for multiple aggravated rapes).
Despite our concerns about' the prosecution’s compliance with its Brady obligations, however, we decline to consider this' claim on the merits on this direct appeal because we find it would be better developed in a post-conviction posture, |12where the trial court can conduct a thorough evidentiary hearing. First, to satisfactorily determine these issues, information is needed which is not contained in the record before us. See generally State v. Johnson, 09-0259, p. 10 (La.App. 4 Cir. 9/16/09), 22 So.3d 205, 212 (An appellate court may not consider evidence which is outside the record). For example, it must be ascertained whether the defense already obtained or could have obtained with reasonable diligence any of the exculpatory or impeachment evidence. See State v. Harper, 10-0356, p. 11 (La.11/30/10), 53 So.3d 1263, 1271 (citing State v. Kenner, 05-1052) p. 2 (La.12/16/05), 917 So.2d 1081, 1081; State v. Hobley, 98-2460, p. 25, n. 10 (La.12/15/99), 752 So.2d 771, 786). Second, we feel that a determination of whether any untimely disclosures by the prosecution adversely affected the defense’s strategy will also require an extra-record exám-iriation, perhaps by calling Mr. Wells’ trial attorneys to testify. See, e.g., State v. Hampton, 00-0522 (La.3/22/02), 818 So.2d 720. Likewise, a determination of when the prosecution was reasonably aware of Mr. Wells’’ self-defense strategy, and thereby should have known which evidence in its possession would be potentially exculpatory, may involve testimony outside the current record. See, e.g., State v. Lindsey, 02-2363 (La.App. 4 Cir. 4/2/03), 844 So.2d 961.
Accordingly, we pretermit this matter and preserve it for Mr. Wells to raise on post-conviction, where a sufficient record may be developed on the issues raised. See State v. Neal, 00-0674, pp. 13-14 (La.App. 4 Cir. 6/29/01), 796 So.2d 649, 659-60 (relegated Brady claim to post-conviction where record on appeal was | ^insufficient); see also Johnson, 09-0259, p. 10, 22 So.3d at 212; State v. Bradford, 02-1452, p. 15 (La.App. 4 Cir. 4/23/03), 846 So.2d 880, 890.
Ill
In this Part, we discuss, the several claimed instructional errors given by the trial judge to the jury.
First, Mr. Wells claims , the trial judge erred by refusing to instruct the jury that their verdict was required to be unanimous. Louisiana law, however, allows a non-urianimous verdict, i.e., a mini *1140 mum of ten out of twelve jurors, in cases where the punishment is necessarily at hard labor. See La. Const, art. I, § 17; La. C.Cr.P. art. 782 A. Moreover, the use of non-unanimous jury trials has been upheld as constitutional by the United States Supreme Court, see Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), and by the Louisiana Supreme Court. See State v. Betrand, 08-2216, pp. 6-7 (La.3/17/09), 6 So.3d 738, 742. Considering that the trial judge declined to incorrectly state the law, a law which has been consistently upheld, we do not find any error in her refusal to give this instruction.
Next/ Mr. Wells contends the trial judge erred by giving the jury a flight instruction. The instruction was stated as follows:
Flight. If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, the flight alone is not sufficient to prove that the defendant is guilty. However, flight may be considered along with all the other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.
Mr. Wells alleges this instruction presupposed a crime was committed and undermined his presumption of innocence. An instruction on flight, however, is permitted in criminal cases where it is supported by the evidence. See, e.g., State v. White, 329 So.2d 738, 741-42 (La.1976); State v. Garner, 45,474, p. 15 (La.App. 2 Cir. 8/18/10), 47 So.3d 584, 592; State v. Smith, 03-786, pp. 10-11 (La.App. 5 Cir. 12/30/03), 864 So.2d 811, 820-21. Here, there was sufficient testimony to support a flight instruction as Mr. Wells admitted leaving the scene immediately after shooting Big Herb. Moreover, the jurors were instructed to first decide whether such flight occurred, and second, whether that flight was probative of guilt or not. See State v. McIntyre, 381 So.2d 408, 412 (La.1980) (“The court did not force the jurors to choose between two inferences but merely stated that a jury must either.consider that evidence introduced is . probative of the defendant’s guilt or. that it is not.”). . We find no erosion of the presumption of innocence.
Third, Mr. Wells contends that the trial judge should have given attempted second degree murder or attempted manslaughter as responsive verdicts. Mr. Wells was charged with second degree murder, however, and the only authorized responsive verdicts to second degree murder are: guilty, guilty of manslaughter, guilty of negligent homicide, or not guilty. See La.C.Cr.P, art. 814 A(3). Because no inchoate offense is authorized as a responsive verdict, the trial judge did not err by refusing to give this instruction. See State v. Jones, 13-1118, p. 6 (La.App. 4 Cir. 1/30/14), 156 So.3d 126, 129 (“A trial court lacks the authority to vary or add to the prescribed verdicts mandated by La. Code Crim. Proc. Art. 814.”) (citing State v. Simmons, 357 So.2d 517, 518 (La.1978)).
Finally, Mr. Wells claims, that the jury should have been instructed that the arrest warrant had no evidentiary value for purposes of assessing his guilt. The |1Krecord reflects that defense counsel objected to mention of the warrant during Detective Wischan’s testimony and requested the . judge to instruct the jury at that point that the warrant had no eviden-tiary value. The record does not reflect, however, that Mr. Wells specifically requested a jury instruction be read prior to deliberations, nor did he object to its absence. See La.C.Cr.P. art. 841 A. Nevertheless, the trial judge instructed the jury on the presumption of innocence and that the bill of indictment had no evidentiary value. We find that, these instructions sufficiently protected' Mr. Wells’ constitution *1141 al rights and thus, even if the failure to include an instruction on the warrant was error, it was harmless. See State v. Smith, 600 So.2d 1319, 1326 (La.1992) (erroneous jury instructions are subject to harmless, error analysis) (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).
IV
We address in this Part the claims regarding the trial judge’s evidentiary rulings.
Mr. Wells contends that: (1) the letters he wrote to the trial judge should' not have been admitted into evidence; (2) the judge improperly excluded evidence of the criminal histories of Big Herb, Pound, and John Hooks; (3) the trial judge improperly excluded evidence about Big Herb’s reputation for violence; (4) the trial judge improperly excluded, evidence of Mr. Wells’ reputation for peacefulness; and (5) the trial judge erroneously denied his motions to suppress.
|15AU relevant evidence is generally admissible. See La. C.E. art. 402. Nonetheless, relevant evidence may be excluded “if its probative value -is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” La. C.E. art. 403.
The Louisiana Code of Evidence prohibits the introduction of character evidence for the purpose of showing that a person acted in conformity with his or character traits. See La. C.E. art. 404 A. An exception to this general rule allows the defendant to introduce evidence of a pertinent trait of his character, as long as the character evidence relates to the charged crime. See La. C.E. art. 404 A(l). Further, an accused may introduce evidence of the dangerous character of the victim, provided that there is evidence of a hostile demonstration or overt act at the time the offense was committed. See La. C.E, art. 404 A(2)(a). Evidence of this nature supports a claim of self-defense because it is relevant to show that the victim was the aggressor and that the defendant’s apprehension of danger was reasonable. See State v. Williams, 96-1587, p. 7 (La.App. 4 Cir. 4/16/97), 693 So.2d 249, 253.
Evidence of other crimes, wrongs, or acts, however, “is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident....” La. C.E. art. 404 B. Further, alleged criminal conduct 117which has not resulted in a conviction may be used to establish a witness’s bias or interest. See La. C.E. art. 607 D; see also State v. Thompson, 08-0874, pp. 5-6 (La.App. 4 Cir. 4/8/09), 10 So.3d 851, 854.
We also importantly note that a trial court’s ruling on the admissibility of evidence will not be overturned absent an abuse of discretion. See State v. Jackson, 12-0090, p. 18 (La.App. 4 Cir. 4/24/13), 115 So.3d 1155, 1166. Moreover, no judgment or .ruling will be reversed by an appellate court because of an error, defect, irregularity, or variance which does not affect substantial rights of the accused. See La. C.Cr.P. art. 921; La. C.E. art. 103 A.
A
Mr. Wells sent the trial judge two letters, one addressed to her, and one addressed, but apparently never sent, to Big Herb’s family. In his letter to the judge, Mr. Wells depicts Big Herb as being “like a brother” to him and describes the night of the shooting as “a serious and grave mistake.” He then indicates that he has been offered a plea bargain of thirty years *1142 by the prosecution, but that he would be “receptive” to a more lenient offer, such as ten years. - In his letter to Big Herb’s family, Mr. Wells expresses remorse for the killing, asks for their forgiveness, and calls the shooting-an “error in judgment, a mistake, irreversible.;.. ”
Mr. Wells now renews his same trial court objections to admission of the letters: (1) they were not properly authenticated; (2) they were written to facilitate a plea bargain and should have been excluded under La. C.E. art. 410; (3) the late | ^disclosure of the letters prejudiced the defense; and (4) their admission violates Mr.- Wells’ right to counsel.
For evidence, to be admitted at trial, it must be identified and authenticated. See State v. Norah, 12-1194, p. 31 (La.App/4 Cir. 12/11/13), 131 So.3d 172, 192 (citing State v. Magee, 11-0574, pp. 41-42 (La.9/28/12), 103 So.3d 285, 315-16). Evidence is authenticated by a showing “sufficient to support a finding that the matter in question is what its proponent claims.” See La. C.E. art. 901 A. The evidence may be authenticated in a variety of ways, including testimony of a 'witness with knowledge, a nonexpert opinion as to the genuineness of the handwriting, or comparison by an expert witness with-other writings which have been previously authenticated. See La. C.E. art. 901 B.
In this casé, the trial judge determined that the letters were-authentic at a pretrial hearing without taking any evidence or hearing any witnesses. She reasoned that the envelope containing the letters (which was mailed to the trial judge and placed in the record at her direction) bore the defendant’s name and listed his return address as 3000 Perdido Street (Orleans Parish jail) during the time frame coinciding with his incarceration in that facility. The judge also noted that the envelope had been stamped with “OPCSO.”
We find that the letters were not properly authenticated and the trial judge erred in finding otherwise without requiring the prosecution to present any witnesses or additional evidence. See generally State v, Langlois, 96-0084, p. 12 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, 547 (letter not authenticated by any [^witness and was not self-authenticating); State v. Guilllard, 04-899, p. 28 (La.App. 5 Cir. 4/26/05), 902 So.2d 1061, 1081 (letter from defendant to victim’s mother not properly authenticated where state failed to present handwriting experts or witnesses familiar with defendant’s - handwriting). This finding pretermits discussion of Mr. Wells’ other complaints about the letters.[7] Even though the letters were improperly admitted into evidence, however, we find that the error was harmless because their con *1143 tent -was cumulative of Mr. Wells’ testimony,' wherein he admitted .to shooting Big Herb and expressed remorse. See State v. Falkins, 12-1654, pp. 18-19 (La.App. 4 Cir. 7/23/14), 146 So.3d 838, 850-51 (improperly admitted evidence will be harmless error if found to be cumulative and corroborative of other properly admitted evidence); State v. Hankton, 12-0466, p. 20 (La.App. 4 Cir. 4/30/14), 140 So.3d 398, 411 (even if defendant’s statement had been improperly admitted, hér testimony at trial, which was corroborative, rendered admission harmless).
I20B
Mr. Wells complains that the trial judge improperly excluded evidence of Big Herb’s dangerous character; the criminal histories of Pound and John Hooks; and Mr. Wells’ reputation for peacefulness.
As noted above, the Louisiana Code of Evidence allows evidence of a victim’s dangerous character, provided that the defendant can show evidence of a hostile demonstration or overt act. See La. C.E. árt. 404 A(2). The trial judge, without deciding whether there was sufficient evidence of an overt act, ruled that the alleged character evidence was too remote to be relevant. We agree. Mr. Wells sought to introduce evidence that Big Herb sold a gun to. an individual who later used it in a crime. This would have been presented through the testimony of a police officer who had been informed by a man that he (the man) was in possession of a gun sold to him by Big Herb that had been used in a murder. Mr. Wells also sought to solicit testimony from officers regarding 2004 and 2006 arrests of Big Herb for drug possession. None of these incidents involved Mr. Wells, nor was there any allegation that he was aware of them. See generally State v. Thibeaux, 366 So.2d 1314, 1317 (La.1978) (“There may be instances where a violent act is too remote in time, or of a greatly different quality than the one which “the defendant accuses the victim of committing.”); State v. Montz, 632 So.2d 822, 825 (La.App. 4 Cir.1994) (“[A]cts committed by the victim against third parties is not admissible.”). We find no abuse of discretion in the trial judge’s ruling' excluded the evidence of Big Herb's character.
|21As to the criminal histories of Pound and John Hooks, both witnesses admitted their prior convictions on the stand. Mr. Wells sought to introduce unadjudicated acts of “drug dealing behavior” by Pound and Mr. Hooks, in concert with Big Herb, to establish -bias under La. C.E. art. 607 D. The trial judge excluded the evidence after finding it.remote and irrelevant. We do not disagree. While alleged criminal conduct that has not resulted in a conviction may be introduced to show bias or interest, see State v. Simmons, 10-1508, p. 4 (La.App. 4 Cir. 2/15/12), 85 So.3d 743, 746, evidence that Big Herb and the testifying witnesses knew each other'and jointly engaged in criminal conduct had already been established by Pound’s testimony wherein he admitted that he, Big. Herb, and John Hooks were smoking marijuana on the day of the shooting. The jury could have sufficiently inferred bias, if warranted, from the evidence set forth at trial. Further, the evidence consisted of arrests from 2004 and-2007, which took place years before the instant offense. We find no abuse of discretion in the court’s refusal to admit the evidence.
Mr. Wells intended to call a former co-worker to testify to his reputation for peacefulness, non-violence, .and honesty, but beeausé she was unavailable at the time of trial, and because the prosecution refused to stipulate to her testimony of Mr. Wells’ character, the defense requested a recess pending her availability. See La.C.Cr.P. art. 709 (Continuance based on absence of a witness). The trial judge *1144 denied the motion. The proffered testimony revealed that Meshika Thomas had worked.with Mr. Wells in 2004 and most recently in 2007. While evidence of a | ¡^non-violent character may be relevant in a second degree murder prosecution, we cannot say that the evidence in this case was sufficiently material as to disturb the trial judge’s ruling. See La.C.Cr.P. art. 709 A(l); see also State v. Plaisance, 00-1858, p. 29 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1193. Moreover, Mr. Wells has not shown any specific prejudice as a result of Ms. Thomas’ absence, especially in light of the jury’s rejection of second degree murder and verdict of manslaughter. See State v. Chisolm, 95-2028, p. 3 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 253.
C
Mr. Wells argues that his statement to police should have been suppressed because he was intoxicated at the time. He also contends that the 9mm firearm found in his car was seized without a warrant.
We note that Mr. Wells raises the intoxication argument for the first time on appeal, and thus it is not properly before this court. See State v. Williams, 02-1030, p. 7 (La.10/15/02), 830 So.2d 984, 988; State v. Kelly, 08-0200, pp. 5-6 (La.App. 4 Cir. 6/4/08), 986 So.2d 880, 884. Moreover, any diminished mental capacity that may result from intoxication is relevant to the voluntariness of a statement “only to the extent. that it made mental or physical coercion by the police more effective.” State v. Thorton, 12-0095, p. 1 (La.3/30/12), 83 So.3d 1024, 1025 (per curiam) (internal quotation marks and citation omitted). In this case, Mr: Wells does not allege any coercion by police, which “is a necessary predicate to the finding that a confession is not ‘voluntary within the meaning of the Due Process ^Clause of the Fourteenth Amendment.” Id., 12-0095, p. 1, 83 So.3d at 1025 (quoting Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)).
.Finally, the record reveals that the police applied for and obtained a valid warrant to search Mr. Wells’ vehicle. We find no abuse of discretion in the trial judge’s denial of the motions to suppress. See State v. Long, 03-2592, p. 5 (La.9/9/04), 884 So.2d 1176, 1180.
y.
In this Part, we address Mr. Wells’ remaining claims.
A
First, he claims the trial judge failed to remedy the conflict of interest, demonstrated by representation by the Orleans Public Defender’s Office (“OPD”) of both Mr. Wells and the witnesses testifying against him, Pound and John Hooks. We note that Mr. Wells frames the conflict as “probable.” We also note that Craig Mordock testified that he, as an attorney from the OPD Conflict Division, represented Pound on a felony charge before Pound testified at trial.[8] Mr. Wells did not object to a potential conflict of interest at that time.
Indigent defender boards are treated as the equivalent of private law firms for purposes of a defendant’s Sixth Amendment right to effective, conflict-free counsel. See State v. Garcia, 09-1578, p. 38 (La.11/16/12), 108 So.3d 1, 28 (citing State v. Connolly, 06-0540, p. 6, n. 1 (La.6/2/06), 930 So.2d 951; 954). Thus, attorneys employed by the indigént defender boards have an ethical 1 ^obligation to *1145 avoid representing a client when any one of them alone would be prohibited from doing so. See id; see also Rule 1.10(a), Rules of Professional Conduct. A trial judge has a duty to inquire into the propriety of representation only when it “knows or reasonably should know that a particular conflict exists,” which is not to be confused with situations where the judge is aware of a “vague, unspecified possibility of conflict, such as that which ‘inheres in almost every instance of multiple representation.’ ” Id., 09-1578, p. 42, 108 So.3d at 31 (quoting Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). But, in ordér to demonstrate' a Sixth Amendment violation where the trihl court has failed to inquire about a conflict of interest about which it knew or should have known, a defendant must establish that an “actual conflict” existed, defined as one which adversely affected his counsel’s performance. See id. (citing Mickens v. Taylor, 535 U.S. 162, 164, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)).
Here, we first note that Mr. Wells did npt alert the trial judge to a potential conflict of interest at any time during the proceedings below. Cf. State v. Cisco, 01-2732, p. 19 (La.12/3/03), 861 So.2d 118, 131. Moreover, Mr. Wells has not shown that, even if attorneys from the OPD represented him, Pound, and Mr. Hooks at the same time, the alleged conflict adversely affected his counsel’s performance. The record reflects .that Mr. Wells was represented by two clearly competent attorneys, who advocated'zealously on his behalf, resulting in a conviction of a lesser offense. There is no evidence, that Mr.. Wells’ attorneys had previously represented Pound or Mr. Hooks, or that the attorneys representing |gBPound and Mr. Hooks, were prohibited from doing so. See Garcia, 09-1578, pp. 45-46, 108 So.3d at 33. Indeed, it appears that at least Pound was represented by counsel from the conflict division. We do not find existence of an “actual conflict” in this case.
B
Next, Mr. Wells claims that his Sixth Amendment right to confrontation was violated by introduction of the recorded 911 call and reports containing firearm test results when the respective testifying witnesses were not personally involved in either the call or tests.
The admission of “testimonial” hearsay evidence violates a defendant’s right to confrontation. See Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. .1354, 158 L.Ed.2d 177 (2004); State v. Thomas, 11-1219, p. 26 (La.App. 4 Cir. 12/6/12), 106 So.3d 665, 682. “Testimony” is usually “[a] solemn' declaration or affirmation made for the purpose of establishing or proving some fact.” Crawford, 541 U.S. at 51, 124 S.Ct. 1354 (internal citation omitted). A statement is nontestimonial in nature, however, “when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.” Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); see also Falkins, 12-1654, pp. 12-13, 146 So.3d 838, 847. Any interrogation resulting from 911 calls is typically not désigned to establish or prove some past fact, but rather to describe current circumstances requiring emergency assistance. See Davis, 547 U.S. at 826, 126 S.Ct. 2266.
lsflHere, the 911 recording reveals an unidentified male calling for assistance after hearing gunshots and exiting his nearby residence. He appeared not to know the victim, and when asked repeatedly if he knew the shooter, he replied in the negative. He also stated that the victim appeared to have- been shot in the chest *1146 and was barely breathing. Under the foregoing jurisprudence, we do not find the 911 call in this case to be testimonial. When viewed objectively, it is clear that any statements elicited from the caller were for purposes of assisting in an ongoing emergency. See Davis, 547 U.S. at 823, 126 S.Ct. 2266. Moreover, the caller did not implicate Mr. Wells as the shooter. Consequently, we find no confrontation violation here.
Mr. Wells also objects to the introduction of fingerprint test .results conducted on a 9mm firearm found in Mr. Wells’ car and a .380 Highpoint firearm, both recovered at the time of arrest. The fingerprint results on both firearms were negative. Troy Dickerson, the testifying officer, admitted that Officer Derrick Melder actually conducted the tests.
A forensic report “created solely for. an ‘evidentiary purpose’ [and] made in aid of a police investigation, ranks as testimonial” for within the meaning of the Confrontation Clause. Bullcoming v. New Mexico, 546 U.S. 647, 131 S.Ct. 2705, 2717, 180 L.Ed,2d 610 (2011) (citing Melendez-Diaz v. Massachusetts, 557. U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)). We find no confrontation violation in introduction of the test results, as they did not implicate Mr. Wells in any way. Cf. Crawford, 541 U.S. at, 51, 124 S.Ct. 1354 (“Testimony” is usually “[a] solemn declaration. or affirmation made for the purpose of establishing or proving some fact.”). Furthermore, Officer Melder testified directly after | ^Officer Dickerson and was therefore available for ample cross-examination on the fingerprint test results. “[W]hen the declarant appears for cross-examination at trial,'the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.” Crawford, 541 U.S. at 59, n. 9, 124 S.Ct. 1354.
C
Mr. Wells next complains that this, court erred by failing to remand this case for a new trial based on newly discovered evidence. , We issued an order denying Mr. Wells’ motion to remand earlier in these proceedings. The new evidence, specifically, consisted of affidavits from two jurors from Mr. Wells’ trial, stating that an alternate juror had begun discussing evidence before deliberations. One juror also stated that the trial judge’s jury instructions and testimony from Diedre McCue, the decedent’s mother, adversely affected the verdict. We see no reason, however, to overturn our prior decision. As a general rule, affidavits or other testimony of jurors are inadmissible to impeach their own verdict. See La. C.E. art. 606 B. This rule, derived from common law, “incorporates important systemic values, including the finality of judgments, and allows only the narrow exceptions for outside influences or extraneous prejudicial information.” State v. Ingram, 10-2274, p. 6 (La.3/25/11), 57 So.3d 299, 302 (citing Tanner v. U.S., 483 U.S. 107, 119, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987)). Confusion about jury instructions and discussion of the evidence at trial, including testimony, does-not constitute extraneous prejudicial outside information. See Ingram, 10-2274, p. 7, 57 So.3d at 302-03; see also La: C.E. art. 606 B (“[A] juror may testify .. 1 in criminal cases only, whether extraneous | ¡^prejudicial information was improperly brought to the jury’s attention.”).[9] Moreover, the jury instruc *1147 tions in this case have already been upheld. See State v. Wells, 14-1701 (La.12/8/15), — So.3d —, 2015 WL 8225228; Part III, ante.
D
Mr. Wells argues that his sentence is excessive and that the trial judge improperly relied on his rejection of a plea offer as an aggravating factor during sentencing, ...
1
“A punishment is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out" of proportion to the severity of the crime.” State v. Dorthey, 623 So.2d 1276, 1280 (La.1998) (internal citation omitted); see also La. Const, art. I; § 20 (“No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment.”). Thus, a sentencing judge has the discretion to impose- any sentence within the sentencing guidelines that is not constitutionally excessive. See. id. at 1280-81. Because a trial judge has broad sentencing discretion, a sentence .will not be set aside for excessiveness absent an abuse of that discretion. See State v. Sims, 11-1447, pp. 5-6 (La.App. 4 Cir. 12/12/12), 106 So.3d 709, 712 (citing State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462).
193We first determine'whether the trial judge adequately considered the guideline factors under La.C.Cr.P. art. 894.1, which must be given weight when imposing sentence. See id, (citing State v. Batiste, 06-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820). Mechanical compliance with the statute is not required, but there must be a factual basis for the sentence imposed. See id., see also La.C.Cr.P. art. 894.1 C (“The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence.”).
to
At the sentencing hearing, Diedre .McCue took the stand and testified about how her son’s death had affected her and her family. Pastor Deborah Robinson also testified to the effect on. the family. The defense presented a letter from Mr. Wells and lengthy argument relating to Mr. Wells’ lack of criminal history, his general good character, and his remorse for the incident. The trial judge also ordered and reviewed a pre-sentence investigation report.
Prior to imposing sentence, the judge noted that she had taken the Article 894.1 factors into account. As to mitigating circumstances, she noted that Mr. Wells had virtually no criminal history and that the shooting .was not reflective of his past. The judge also noted Mr. Wells’ remorse throughout the proceedings. As to aggravating factors, the judge did voice her concern that Mr. Wells had refused a reasonable plea offer of fifteen years, although she stated that “no one is penalized for going to trial.” She also noted, the fact that he voluntarily went to the |3ntrailer park that day, and that as a result, a life was taken. When imposing the 25-year sentence, the judge specifically noted that it was as a result of the mitigation presented. .
3
We find that the trial judge set forth an • adequate factual basis for the sentence, considering both mitigating and aggravating circumstances, and balancing society’s interests against the defendant’s. Further, while a sentence “should not be increased due to vindictiveness arising from the exercise of the defendant’s right to stand trial,” see State v. Frank, 344 *1148 So.2d 1039, 1045 (La.1977), the imposition of a longer sentence than a defendant would have received had he pled guilty does not automatically constitute punishment for exercising such right. See State v. Every, 09-0721, p. 12 (La.App. 4 Cir. 3/24/10), 35 So.3d 410, 419. Even though the trial judge stated that Mr. Wells’ refusal to accept the plea bargain was a factor for her, she specifically stated that her downward departure from the maximum of 40 years was due to mitigating evidence. We do not find any abuse of discretion or vindictiveness in sentencing.
Mr. Wells was charged with second degree murder, which carries a mandatory sentence of life imprisonment without benefit of parole or probation. Instead, he was convicted of manslaughter and received a sentence of 25 years. Under the circumstances of this case, and compared to sentences imposed under similar circumstances, we do not find that Mr. Wells’ 25-year sentence is constitutionally excessive. See State v. Rouser, 14-0613, pp. 18-21 (La.App. 4 Cir. 1/7/15), 158 So.3d 860, 872-74 (defendant with no prior convictions charged with second degree murder and convicted of manslaughter; 30-year sentence not excessive); Sims, 11-1447, pp. 11-13, 106 So.3d at 715-16 (charged with second degree murder; convicted of manslaughter; 30-year sentence without benefit of parole not excessive); State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094 (sixteen-year-old first offender charged with second degree murder; convicted of manslaughter; 33-year sentence not excessive); State v. Jefferson, 02-1159 (La.App. 4 Cir. 12/4/02), 834 So.2d 572 (charged with first degree murder; convicted of manslaughter; sentence of 25-years not excessive).
E
In his final assignment of error, Mr. Wells complains that the record on appeal is incomplete, specifically because there are several bench conferences which were not transcribed, the motions to suppress are'absent, and there is nothing in the record showing that the judge rejected a 12-year plea offer.[10]
Appellate counsel requested the transcriptions of numerous bench conferences and hearings. During a post-trial hearing, appellate counsel emphasized the need for transcriptions of discussion's related to discovery and/or Brady material. Notably, the record contains the transcripts of four previously unrecorded hearings or bench conferences, all related to discovery or Brady and none of them are pertinent to the claims herein. Mr. Wells cannot now claim- that |aPthe record on appeal is inadequate after receiving the transcripts he requested. The fact that he did not. receive every single transcript does not entitle him to relief, as-“an incomplete record may nonetheless be adequate for appellate review.” State v. Castleberry, 98-1388, p. 29 (La.4/13/99), 758 So.2d 749, 773. Moreover, Mr. Wells has not demonstrated any prejudice based on the missing transcripts, nor has’he specified, beyond mere conjecture, why they are essential to his appeal. See State v. Pinion, 06-2346, pp. 7-8 (La.10/26/07), 968 So.2d 131, 134 (“[T]he failure to record bench conferences will ordinarily not affect the direct review process when the record suggests that the unrecorded bench conferences had no discernible impact on the proceedings and did *1149 not result in any specific prejudice to the defendant.”) (citing cases).
As to the motions to suppress, while the motions themselves are not in the record, the suppression hearing transcript is, and we found it adequate to determine the issue. See Part IV-C, ante.
Finally, despite Mr. Wells’ claim to the contrary, a transcript of the judge’s rejection of a 12-year plea offer is not pertinent to any claims on appeal. Cf., e.g., Lafler v. Cooper, 566 U.S. —, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012); Missouri v. Frye, 566 U.S. —, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Moreover, the trial judge has the discretion to reject a plea bargain, even if the parties are in complete agreement as to its terms. See State v. Manchester, 545 So.2d 528, 529 (La.1989). We do not see how the transcript’s absence has prejudiced Mr. Wells’ right to judicial review.
_jj¡DECREE
We defer Christopher Wells’ claims under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to post-conviction proceedings. We affirm Mr. Wells’ conviction for manslaughter in the killing of Brandon McCue and the resulting 25-year sentence at hard labor imposed upon him.
AFFIRMED

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed,2d 560 (1979).

. We also did not identify any errors patent. See La.C.Cr.P. art. 920(2),

. Although John Hooks testified that Mr. Wells was the shooter, he admitted on cross-examination that he never saw Mr. Wells raise a gun, and stated that he fled the scene immediately after hearing gunshots.

. Defense counsel then requested that the jury not be brought back into the courtroom until the prosecution could certify to the court that every single piece of evidence in the case had been reviewed for additional Brady material. The trial judge denied the request and instead offered to ask the prosecution to review the files after trial.

. While the trial judge did acknowledge a "Brady violation,” we note that a determination of whether evidence qualifies as Brady material is virtually .impossible to make before or during trial in light of the required analysis involved: "The evidence is material only if there is a reasonablé probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (emphasis added).

. The rale, in at least one aspect, imposes a more onerous burden than Brady requires in light of its- requirement that the prosecutor not only disclose exculpatory evidence, but also evidence that tends to mitigate the offense. See Kyles, 514 U.S. at 437, 115 S.Ct. 1555 (discussing ABA Model Rule of Professional Conduct 3.8(d), which sets forth the same standárds ás Louisiana Rule 3.8(d)).

. We briefly discuss them here, however. Evidence of plea discussions is inadmissible when made to "an attorney for or other representative of the prosecuting authority...." La.,C.E. art. 410. Here, the letters were sent to the trial judge, not the prosecution and thus Article 410 does not apply. La.C.Cr.P. art. 768 requires the prosecution to provide notice to the defendant prior to opening statements that it intends to introduce a defendant's confession or statement into evidence. Although it was one day before, the prosecution’s notice was timely under this article. Moreover, the trial judge noted that tire letters had already been in the record for several months. Finally, it cannot be said that sending the letters constituted a “critical” proceeding, "where the results might well settle the accused’s fate and reduce the trial itself to a mere formality.” U.S. v. Wade, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Thus, there was no violation of the right to counsel at the time. See State v. Carter, 94-2859, p. 6 (La. 11/27/95), 664 So.2d 367, 373. In any event, the Orleans Parish Docket Master reveals that Mr». Wells was represented by counsel at the time he wrote the letters, even though he evidently wrote them without counsel’s knowledge.

. The primary purpose of Mr. Mordock’s testimony was to demonstrate that Pound had not received any deal from the prosecution in exchange for his testimony.

. Notably, participation by alternate jurors in deliberations is an extraneous influence on the jury and represents a prima facie case of prejudice requiring reversal. See State v. Barber, 97-2749 (La.4/24/98), 708 So.2d 1054 (per curiam). Here, however, the record reflects that the trial judge dismissed the jury for deliberations, "with the exception of our two alternates.”

. At the sentencing hearing, the trial judge stated, “There was no mystery but that you were offered, or being offered, a fifteen year sentence before we started this trial. And yes, I did say, ‘No,’ to twelve years on the next day because we had started the trial. Those things were in motion already.”